Sydney N. **FLOERSHEIM**, an Individual trading and doing business as Floersheim Sales Company and National Research Company, Appellant,

v.

Lewis A. **ENGMAN** et al.

No. 72–1622.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 23, 1973.

Decided Dec. 26, 1973.

Marion E. Harrison, Washington, D. C., for appellant.

Richard L. Beizer, Asst. U. S. Atty., and Robert E. Duncan, Atty., F. T. C., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry, J. Michael Mc-Garry, III, Asst. U. S. Attys., Harold D. Rhynedance, Jr., Asst. Gen. Counsel, F. T. C., and Alvin L. Berman, Atty., Washington, D. C., were on the brief for appellees.

Before WRIGHT, LEVENTHAL and ROBB, Circuit Judges.

LEVENTHAL, Circuit Judge:

Appellant sells to creditors and debt-collection agencies certain forms used to trace allegedly delinquent debtors ("skip-tracer forms") and to induce them to pay their debts ("payment demand" forms). The Federal Trade Commission's order of February 5, 1968, required appellant (1) to cease and desist from certain deceptive and misleading practices with respect to the appearance and content of these forms and (2) to file a report of compliance as required by 16 C.F.R. § 3.61. The order was affirmed by the Court of Appeals for the Ninth Circuit. Floersheim v. FTC, 411 F.2d 874 (9th Cir. 1969), cert. denied, 396 U.S. 1002, 90 S.Ct. 551, 24 L.Ed.2d 494 (1970).

Responding to the direction to file a compliance report, appellant submitted a set of revised forms to the Commission on February 10, 1970. On April 10, the FTC determined that the forms did not conform to the terms of the cease and desist order, and consequently rejected them. Appellant then brought an action in the District Court for the District of Columbia, seeking (a) a declaration that the forms did indeed conform to the requirements of the cease and desist order and (b) an injunction restraining the FTC from seeking civil penalties for non-compliance with its order, as provided by 15 U.S.C. §§ 45(l) and 56. The District Court granted the FTC's motion for summary judgment on the merits, and Floersheim appealed. We conclude that appellant's complaint fails to raise an issue appropriate for judicial review and must be dismissed for lack of subject-matter ju-

risdiction in the District Court.[1] Such jurisdiction must be based either on the Federal Trade Commission Act itself or the Administrative Procedure Act, and neither law permits this kind of action.

## I.  REVIEW UNDER THE FTC ACT

The Federal Trade Commission Act does not in terms authorize review of Commission interpretations of cease and desist orders. The only section of the Act that provides for judicial review is section 5(c), 5 U.S.C. § 45(c), providing for review by the courts of appeals of cease and desist orders. Appellant however does not seek review of the FTC's cease and desist order; that order has already been reviewed and held valid, Floersheim v. FTC, *supra*. He asks the court to review the Commission's determination that his proposed course of action would violate the outstanding order. Such review is not contemplated by section 5. Section 5 deals with judicial review of the cease and desist order; it is not until that review has been completed (or waived) that the order becomes final, see 15 U.S.C. § 45(g), and it is only then that the respondent has the duty of compliance.

Our conclusion in this regard is in accord with the decisions of other courts. In Robertson v. FTC, 415 F.2d 49 (4th Cir. 1969), petitioner, a member of a board of trade subject to a cease and desist order, sought review of a mode of compliance accepted by the FTC that worked to petitioner's individual detriment. The court dismissed the petition for review for lack of jurisdiction.

In Rettinger v. FTC, 392 F.2d 454 (2d Cir. 1968), the Commission changed its interpretation of an order ten years after it became final. Petitioner, who had been acting in reliance on the earlier interpretation during the intervening years, sought to reopen the proceedings. The court declined to treat petitioner's action as one to reopen and modify an earlier cease and desist order, as provided by section 5(b) of the FTC Act. Rather, the court held that petitioner was actually seeking review of a changed Commission interpretation of the earlier order. Noting that the equities of petitioner's position were "appealing," the court nonetheless held that it had "no jurisdiction to review under the Federal Trade Commission Act." 392 F.2d at 457.[2]

Petitioner complains that inability to obtain expeditious consideration of an unlawful FTC view of the requirements of a cease and desist order places him in an intolerable position. Either he acquiesces in an erroneous and hence unlawful position by the Commission or he faces the prospect of civil penalties of up to $5000 a day, recovered in an action brought by the United States for violation of a cease and desist order of the Commission after it has become final, if he should use the proposed forms. 15 U.S.C. § 45(*l*). Indeed, he is also exposed to criminal contempt for willful disobedience of the court's mandate. 18 U.S.C. § 401.

Petitioner's sketch of an unfairly onerous choice is too darkly drawn by far. Criminal contempt is essentially reserved for willful contumacy and not good faith disagreement, *see* In re Floersheim, 316 F.2d 423 (9th Cir. 1963). And the statutory provision for

1. FTC failed to file a cross-appeal. However, the question of jurisdiction is one "the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it." Mansfield, Coldwater & Lake Michigan Ry. Co. v. Swan, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884). See also State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 87 S.Ct. 1199, 18 L. Ed.2d 270 (1967) ; American Fire & Cas.

Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L. Ed. 702 (1951).

2. In Vulcanized Rubber & Plastics Co. v. FTC, 103 U.S.App.D.C. 384, 258 F.2d 684 (1958), petitioner urged that an FTC cease and desist order, as interpreted, was unlawful. Observing that "this interpretation may be changed or it may never be enforced," we held that there was "no controversy calling for judicial review of the interpretation at the present time."

civil recovery of penalties of $5000 a day refers to a maximum, not a minimum. There is room for leniency by the court, if petitioner's view of the meaning of the order is plausible and not defiant.

The equitable limitations inherent in the Government's remedies are a substantial protection for a respondent with a reasonable and bona fide claim. Moreover, that person has some right of access, albeit narrow, to an equitable remedy under the FTC Act. A cease and desist order, as affirmed, is in essence a judicial decree, although the statute grants the major role in enforcement to the FTC, United States v. Morton Salt Co., 338 U.S. 632, 643, 70 S.Ct. 357, 94 L.Ed. 401 (1950). We do not think that Congress intended to deny the right generally available to those subject to court order to petition the court for clarification of a genuinely ambiguous decree, under the procedure invoked in New York v. New Jersey, 296 U.S. 259, 56 S.Ct. 188, 80 L.Ed. 214 (1935).[3]

A court's inherent authority to construe its mandate applies to the judgment of a Federal court of appeals entered upon review of the order of a Federal administrative agency. This was established in Regal Knitwear Co. v. NLRB, 324 U.S. 9, 65 S.Ct. 478, 89 L. Ed. 661 (1945). The Supreme Court had before it the issue whether an appellate court's judgment enforcing an NLRB cease and desist order could extend to the petitioner's "successors and assigns." Since no successor or assign was before the Court, it decided not to decide the question in the abstract. It noted, however, that rather than run the risk of contempt of court, parties could

> petition the court granting it [the enforcement order] for a modification

or construction of the order. Cf. New Jersey v. New York City, 296 U.S. 259 [56 S.Ct. 188, 80 L.Ed. 214]. While such relief would be in the sound discretion of the court, we think courts would not be apt to withhold a clarification in the light of a concrete situation that left parties or "successors and assigns" in the dark as to their duty toward the court. Enforcement orders are issued to effectuate the purposes of the Act, not for the entrapment of parties, and courts no less than parties desire to avoid unwitting contempts as well as to punish deliberate ones.

324 U.S. at 15, 65 S.Ct. at 482.[4]

These standards should govern the availability of judicial construction of the terms of a cease and desist order, with · one modification: Where the court's mandate is entered on the basis of an agency's cease and desist order, the scope of the order is a matter to be taken up with the agency before any application is made to the court.

The business of supervising compliance with cease and desist orders under § 5 of the Act is that of the FTC, United States v. Morton Salt, *supra*. Only if the mandate of the agency and court is genuinely unclear may judicial clarification be appropriate. And as stated in *Regal Knitwear, supra,* the decision to entertain a petition for construction of an order rests "in the sound discretion of the court" and would be permitted only to "effectuate the purposes of the Act." This is a possibility for the rare and exceptional case. We do not anticipate a procedure whereby every rejection of proferred compliance would constitute an occasion for review; such an approach would not effectuate the purpose of the Act but confound it,

---

3. The Court had enjoined New York City from dumping "any garbage or refuse" into waters off the coast of New Jersey. Failure to comply would have subjected the city to penalties of up to $5000 a day. A dispute arose as to whether "garbage" included sedimentation. New York City petitioned the Court for a clarification of its decree.

The Supreme Court granted the petition and held that New York's proposed course of action did not violate the injunction.

4. Accord, Empire National Bank of Clarksburg v. Penfield Coal & Coke Co., 354 F.2d 873 (3d Cir. 1966).

for it would provide a technique for delaying indefinitely the enforcement of cease and desist orders [5] and for clogging the courts whose review of orders is part of the statutory scheme. The claim that FTC is taking a more rigorous view of the requirement of the order than the respondent considers sound is not a basis for advance judicial consideration. This is the kind of point that can be raised when an enforcement sanction is pursued (civil penalty or criminal contempt), for there is opportunity there to obtain a softening of penalty for a construction that is bona fide and reasonable even though ultimately rejected. Advance judicial consideration under the doctrine of *Regal Knitwear* is reserved for the case of exceptional need and unfairness.

Most important for present purposes, clarification of an equitable decree can be obtained only from "the court granting it." Regal Knitwear v. NLRB, *supra*, 324 U.S. at 15, 65 S.Ct. 478, 89 L.Ed. 661. The court of appeals that originally affirmed the cease and desist order has had the parties and issues before it. It is palpably the court uniquely qualified to interpret its own order, and judicial economy requires that it be the only forum before which questions of interpretation be raised. Appellant's proper course, then, would have been to petition the Court of Appeals for the Ninth Circuit for a clarification of its decree. No district court action for a declaratory judgment is authorized by the Federal Trade Commission Act.

## II. REVIEW IN DISTRICT COURT

Appellant has in this case brought an action in district court to review the error of the FTC—naturally, assailed as arbitrary and capricious action—in setting forth the scope of the cease and desist order. It is by now settled doctrine that a person may have relief in equity to avoid invalid official action where the risk of penalties, if he is remitted to defense of enforcement actions, is so coercive as to be a denial of due process. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Equitable doctrine has been advanced with the presumptions of reviewability in the Admininstrative Procedure Act as to agency regulations or orders that have presently compulsive and coercive effects. Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L. Ed.2d 681 (1967). The doctrine has been extended, with certain limitations, to an agency action that constitutes a general interpretation on the highest level, presenting a controversy fully ripe for review. National Automatic Laundry & Cleaning Council v. Schultz, 143 U.S.App.D.C. 274, 443 F.2d 689 (1971). The circumstances and equities presented by appellant are of an entirely different, and lesser, order of magnitude, and appellant makes no comparable case for judicial interposition.

If appellant's case does fall within the rare situation of one that calls for judicial interposition before any enforcement action is begun, he must obtain his relief from the Ninth Circuit whose mandate was entered on appellant's petition for review. That court has jurisdiction. Regal Knitwear v. NLRB, *supra*. It may be unlikely to give relief, but it is open. There is no jurisdiction in the District Court to give the relief sought.

The appeal, which seeks to resist a judgment dismissing the complaint, cannot be sustained. The case is remanded to the District Court with instructions to dismiss the complaint for lack of jurisdiction.

So ordered.

---

5. We note also that the policy behind § 5(g) of the Act, setting the time at which the order becomes final, is to "enforce obedience to the Commission's orders to cease and desist. . . ." H.Rep.No.1613, 75th Cong., 1st Sess., at 4 (1937). Such a policy would be ill-served by introducing into the process an occasion for delay.