BROWN & WILLIAMSON TOBACCO
CORP., Appellant,

v.

Lewis A. ENGMAN, Chairman, Federal
Trade Commission, et al., Appellees.

PHILIP MORRIS INCORPORATED,
Appellant,

v.

Lewis A. ENGMAN, Chairman, Federal
Trade Commission, et al., Appellees.

R. J. REYNOLDS TOBACCO
CO., Appellant,

v.

Lewis A. ENGMAN, Chairman, Federal
Trade Commission, et al., Appellees.

LOEW'S THEATRES, INC., Appellant,

v.

Lewis A. ENGMAN, Chairman, Federal
Trade Commission, et al., Appellees.

AMERICAN BRANDS, INC.,
Appellant,

v.

Lewis A. ENGMAN, Chairman, Federal
Trade Commission, et al., Appellees.

LIGGETT & MYERS INCORPORAT-
ED, Appellant,

v.

Lewis A. ENGMAN, Chairman, Federal
Trade Commission, et al., Appellees.

Nos. 398 to 403, Dockets 75–6081,
75–6084, 75–6085, 75–6087,
75–6088 and 75–6090.

United States Court of Appeals,
Second Circuit.

Argued Oct. 29, 1975.

Decided Dec. 22, 1975.

Martin London, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Eugene R. Anderson, Anderson, Russell, Kill & Olick, P.C., New York City (Lewis A. Kaplan, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Abe Krash, Melvin Spaeth, Jerome I. Chapman, Leonard H. Becker, Washington, D.C., Donald Fried, Thomas F. Ahrensfeld, Alexander Holtzman, New York City, Arnold & Porter, Washington, D.C., Conboy, Hewitt, O'Brien & Boardman, Davis, Polk & Wardwell, New York City, Paul C. Warnke, John F. Kovin, Washington, D.C., H. C. Roemer and Max H. Crohn, Jr., of counsel, Clifford, Warnke, Glass, McIlwain & Finney, Washington, D.C., Irving Scher, Stanley A. Rothstein, Weil, Gotshal & Manges, Chadbourne, Parke, Whiteside & Wolff, New York City, Daniel J. O'Neill, Charles K. O'Neill, Anderson, Russell, Kill & Olick, P.C., New York City, Grainger R. Barrett, New York City, Joseph Greer, Lanny J. Davis, Patton, Boggs & Blow, Washington, D.C., of counsel), for appellants.

Richard J. Weisberg, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty. for the Southern District of New York, Steven J. Glassman, Asst. U. S. Atty., of counsel), for appellees.

Before MULLIGAN, OAKES and MESKILL, Circuit Judges.

OAKES, Circuit Judge:

This appeal is from the denial of appellants' motion for a stay of penalties under Section 5(*l*) of the Federal Trade Commission Act, 15 U.S.C. § 45(*l*) (1975 Supp.). The motion for a stay was sought by the six appellants who collectively produce about 99 per cent of the cigarettes manufactured in the United States. They have instituted declaratory judgment actions to obtain review of the Federal Trade Commission's interpretation of six cease and desist consent orders previously entered against them. Appellants have sought review prior to any enforcement proceedings brought by the FTC. The United States District Court for the Southern District of New York, Charles H. Tenney, Judge, denied the motion for a stay. He concluded that appellants were not entitled to a stay as a matter of law and that they had failed to show that without the stay they will suffer irreparable injury or that the balance of the equities tipped decidedly in their favor. We affirm.[1]

The consent orders here involved were formally issued by the FTC on March 30, 1972. Essentially they require, in very detailed terms as to size of print, location, color and shape, that appellants include in their newspaper, magazine and other periodical advertising the now famous Surgeon General's warning reading

---

1. In the appellants' reply brief it was brought to our attention that the government filed civil enforcement actions in the United States District Court for the District of Columbia on October 17, 1975. We understand by correspondence from the parties that there are motions by the appellants here and defendants therein to have the civil enforcement action dismissed for lack of jurisdiction and for improper venue, or to have the action transferred to the Southern District of New York. We also are aware that by order dated November 5, 1975, Judge Tenney dismissed the complaints underlying the present appeal, on the basis that he would decline to exercise jurisdiction in the light of the enforcement action in the District of Columbia. Appellants have filed a notice of appeal therefrom and by letter have sought to consolidate that appeal with the instant one. Consolidation is opposed by the Government.

We have considered whether Judge Tenney's order dismissing the action has rendered the present appeal moot. We have concluded, however, that affirmance of the dismissal will not necessarily make this appeal moot because still at issue is the question whether penalties that possibly accrued prior to the commencement of the District of Columbia action or the dismissal of the underlying complaint here should be stayed. As to consolidation, since the appeal herein has already been argued, the more orderly procedure appears to be to consider the issue of preenforcement stay of penalties separately as it has arisen.

"Warning: The Surgeon General has determined that cigarette smoking is dangerous to your health." The history underlying the consent orders is not particularly relevant for present purposes, so that it is set out only in the margin.[2] Suffice it to say that the orders were entered into after negotiations resulting from the FTC's serving appellants with proposed complaints charging them with deceptive practices under 15 U.S.C. § 45(a) for the failure to disclose in their advertising the hazards of using cigarettes. The important thing for our purposes is that in the consent order each of the appellants waived "any further procedural steps" and "all rights to seek judicial review or otherwise to challenge or contest the validity of the order entered pursuant to this agreement." It should also be mentioned that the consent orders required the submission of compliance reports. These reports were filed in September 1972, with the result that the FTC reported to Congress in December 1972 and January 1974 that industry practice was in substantial compliance with the orders. Subsequently, however, the FTC claimed that prior to

and since September 1972 appellants had engaged in practices which did not comply with the consent orders' detailed requirements. Accordingly the Commission initiated a compliance investigation. From November 1974 through January 1975 attempts apparently were made to settle the FTC's claims of violations of the orders, but the settlement negotiations broke down. The companies claim that the FTC demanded too high a sum as a penalty for past violations and the FTC counters that such a sum was not a condition to further negotiation, and that appellants had refused to accept the staff's interpretation of the consent orders. On March 17, 1975, appellants asked the FTC Commissioners to reject the staff's interpretation. On August 1, 1975, the Commission, by letters to the companies, formally indicated that the Commissioners supported the staff's interpretation and that pursuant to the provisions of 15 U.S.C. § 56(a)[3] it would notify the Attorney General of its intention to commence an action for civil penalties and for other relief on the basis of these violations. The letters of August 1 stated, however, that for certain of the

---

**2.** As taken essentially from the affidavit of Eric M. Rubin, an FTC staff attorney, the history was as follows. In June, 1964, after the Surgeon General released the Report of his Advisory Committee on Smoking and Health, the FTC issued a proposed rule requiring the inclusion of a health warning in all cigarette labeling and advertising. Congress, however, adopted the Cigarette Labeling and Advertising Act of 1965, Pub.L. No. 89–92, 79 Stat. 282, requiring a health warning on all cigarette packages, but barring until July 1, 1969, the FTC from requiring such a warning in cigarette advertising. 1965 U.S.Code Cong. & Admin.News 2350, 2351. When that time expired the FTC again announced its intention to promulgate a trade regulation rule requiring a warning to be included in all cigarette advertising. Congress again intervened to enact the Public Health Cigarette Smoking Act of 1969, 15 U.S.C. § 1331 *et seq.* This act prohibited radio and television advertising of cigarette and little cigars after January 1, 1971, 15 U.S.C. § 1335, and foreclosed any action by the FTC "with respect to its pending trade regulation rule proceeding" before July 1, 1971, 15 U.S.C. § 1336(a). The Act also required that if the FTC planned to take any

action in this area after July 1, 1971, the Commission had to give six months' notification to Congress of its determination to do so. But Congress specifically left untouched the FTC's authority with respect to unfair or deceptive cigarette advertising acts or practices. 15 U.S.C. § 1336(b). On July 1, 1971, the FTC served on each of the appellants individual complaints charging them with failure to disclose the Surgeon General's warning. Agreements containing consent orders agreeing to such disclosure were negotiated in January of 1972 and in March of 1972 the orders were finally issued and thereafter served.

**3.** 15 U.S.C. § 56 provides in pertinent part:

Whenever the Federal Trade Commission has reason to believe that any person, partnership, or corporation is liable to a penalty under section 54 of this title or under subsection (*l*) of section 45 of this title, it shall—

(a) certify the facts to the Attorney General, whose duty it shall be to cause appropriate proceedings to be brought for the enforcement of the provisions of such section or subsection . . . .

alleged violations of the orders the Commission would hold the civil penalty action in abeyance for 180 days.[4] Appellants thereafter, on August 14, 1975, commenced actions for a judgment declaring that the "determinations" in the Commission's letters of August 1 are inconsistent with the provisions of the orders and that the appellants are not liable for civil penalties. They also sought an order staying pending final judgment the accumulation of penalties for alleged violations of the orders under Section 5 of the Act, 15 U.S.C. § 45.[5] The six complaints were consolidated, since they contain identical questions of law, and after a hearing the court denied the motion for a stay of penalties, treating it essentially as an application for a preliminary injunction.

Appellants principally argue that they are entitled to a stay of the accrual of civil penalties as a matter of law. They do so on the basis of a series of Supreme Court decisions which commenced with *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and include *Wadley Southern Railway Co. v. Georgia*, 235 U.S. 651, 35 S.Ct. 214, 59 L.Ed. 405 (1915); *Oklahoma Operating Co. v. Love*, 252 U.S. 331, 40 S.Ct. 338, 64 L.Ed. 596 (1920), and *St. Regis Paper Co. v. United States*, 368 U.S. 208, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961).[6] The argu-

---

4. The alleged violations for which immediate notification of the Department of Justice was to be made included omission of the warnings in vending machine display panels; omission or undersizing in promotional materials such as counter racks and calendars; undersizing or mispositioning of the warning in newspaper, magazine and other periodical advertising; and, in connection with foreign language advertising, mistranslation of the warning or use of a different language therein.

5. 15 U.S.C. § 45(a)(1) declares unfair or deceptive acts in commerce unlawful. The statute empowers and directs the Commission to prevent such acts, 15 U.S.C. § 45(a)(6). It authorizes the issuance of cease and desist complaints, provides for agency hearings thereon and affords review of FTC orders in the court of appeals. 15 U.S.C. § 45(b)–(d). The penalties for violation of orders are set forth in 15 U.S.C. § 45(*l*) as follows:

Any person, partnership, or corporation who violates an order of the Commission after it has become final, and while such order is in effect, shall forfeit and pay to the United States a civil penalty of not more than $10,000 for each violation, which shall accrue to the United States and may be recovered in a civil action brought by the Attorney General of the United States. Each separate violation of such an order shall be a separate offense, except that in the case of a violation through continuing failure to obey or neglect to obey a final order of the Commission, each day of continuance of such failure or neglect shall be deemed a separate offense. In such actions, the United States district courts are empowered to grant mandatory injunctions and such other and further equitable relief as they deem appropriate in the enforcement of such final orders of the Commission.

For a general discussion of the penalty mechanism, *see United States v. J. B. Williams Co.*, 498 F.2d 414 (2d Cir. 1974), *noted in* 41 Brooklyn L.Rev. 792 (1975), 43 Geo.Wash.L.Rev. 307 (1975), 88 Harv.L.Rev. 1035 (1975).

6. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), held that state statutes establishing maximum rail rates and providing large penalties (including imprisonment) for violation thereof were constitutionally invalid since the parties had been given no opportunity to contest validity of the rates and were effectively denied judicial review of the rates by the magnitude of the penalties. *Id.* at 147–48, 28 S.Ct. 441. *Wadley Southern Ry. v. Georgia*, 235 U.S. 651, 669, 35 S.Ct. 214, 59 L.Ed. 405 (1915), held that where a state railroad commission joint rate order was made after hearing and where the carrier did not avail itself of a "safe, adequate, and available" statutory judicial review to test the validity of the order, the statute authorizing a $5,000 a day penalty for violation was not invalid. *Oklahoma Operating Co. v. Love*, 252 U.S. 331, 40 S.Ct. 338, 64 L.Ed. 596 (1920), followed *Young* where there was no opportunity for judicial review of a state agency order. *St. Regis Paper Co. v. United States*, 368 U.S. 208, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961), held that fixed statutory forfeitures of $100 per day for failure to file special reports in compliance with FTC orders were not invalid where "petitioner did not try to obtain judicial review prior to the commencement" of the Government's penalty action, and where the petitioner did not "seek a stay once the litigation had begun." *Id.* at 225, 82 S.Ct. at 299. The Court seemed to indicate that a declaratory judgment action would have lain to contest the validity of the orders and pointed out that even after the Government commenced the enforcement action a stay of penalties could have been but was not sought. *Id.* at 225–27, 82 S.Ct. 289.

ment is that a party whose conduct is made subject to administrative action must be given the opportunity to obtain a judicial test of the validity of such action and, further, as a matter of due process of law, cannot be subjected to the risk that substantial penalties will accumulate during the course of the judicial proceeding. This line of cases is based on the reasoning that, regardless of the ultimate determination on the merits, due process requires that some real opportunity to challenge administrative action be afforded, and that such opportunity cannot exist where penalties are so great that noncompliance and a judicial challenge cannot be risked. The argument is the more compelling, the appellants suggest, in connection with FTC statutory penalties due to recent decisions, including our own *United States v. J. B. Williams Co.*, 498 F.2d 414, 435–36 (2d Cir. 1974), note 5 *supra*, which hold that penalties imposed for noncompliance with the Commission's cease and desist order may be computed on the basis of a separate violation for each day and for each advertisement.[7] Appellants thus claim that the district court's endorsement of the Government's position in this case is directly contrary to definitive Supreme Court decisions which embody the rule that a stay of penalties is required during a good faith judicial challenge to an agency determination.

■ *Young, Wadley, Love* and *St. Regis*, however, do not go as far as appellants suggest. Rather, they establish that one has a due process right to contest the *validity* of a legislative or administrative order affecting his affairs without necessarily having to face ruinous penalties if the suit is lost. The constitutional requirement is satisfied by a statutory scheme which provides an opportunity for testing the validity of

statutes or administrative orders without incurring the prospect of debilitating or confiscatory penalties. As stated in *St. Louis, Iron Mountain & Southern Railway Co. v. Williams*, 251 U.S. 63, 65, 40 S.Ct. 71, 72, 64 L.Ed. 139 (1919),

> where such an opportunity [to contest the validity] is afforded and the [statute or administrative order] is adjudged valid, or the carrier fails to avail itself of the opportunity [to contest the validity], it then is admissible, so far as due process of law is concerned, for the state to enforce adherence to the rate by imposing substantial penalties for deviations from it.

See *St. Regis, supra*, 368 U.S. at 226–27, 82 S.Ct. 289; *Wadley, supra*, 235 U.S. at 667–69, 35 S.Ct. 215. See also *Ford Motor Co. v. Coleman*, 402 F.Supp. 475 at 483–484 (D.D.C.1975).

■ Here the penalties which the appellants seek to have stayed did not attach prior to their opportunity to contest the validity of the orders. Rather, the risk of penalties began to accrue only after the appellants entered into consent decrees which acknowledged the validity of the decrees and waived the right further to challenge their validity. The statutory scheme of the Federal Trade Commission Act contemplates ample opportunity to the company accused of a deceptive practice to test the initial validity of the order. It can do so by seeking a review in the United States Court of Appeals. 15 U.S.C. § 45(c); note 5 *supra; see United States v. J. B. Williams Co., supra*, 498 F.2d at 419 (majority opinion) and at 441 (dissenting opinion). In the instant case, however, it is not the *validity* of the consent orders that appellants contest; rather it is their interpretation by the FTC. The question whether one is entitled to a stay of penalties as a matter of law in a suit involv-

---

7. Appellants argue that in the complaints filed in the District of Columbia enforcement action the FTC claims that each copy of every advertisement constitutes a separate violation of the consent order. On this basis, appellants urge that the potential liability for an advertisement in the Sunday New York Daily News with a circulation of 3 million is $30 billion. Their point that substantial penalties may be involved is made even though we need not accept their characterization of the FTC complaint.

ing the enforcement of an admittedly valid administrative order is not concluded by the *Young* line of cases. Appellants have pointed to no cases which support their proposition that at the compliance or enforcement stage they are still entitled to a stay. The only cases in which the argument has been made have not accepted it, although they hardly have the weight here that the Commission would attribute to them. *See Floersheim v. Weinberger*, 346 F.Supp. 950, 956 (D.D.C.1972), *modified on other grounds and aff'd sub nom. Floersheim v. Engman*, 161 U.S.App.D.C. 30, 494 F.2d 949 (D.C.Cir. 1973); *United States v. Beatrice Foods Co.*, 322 F.Supp. 139, 141 n. 1 (D.Minn.1971).

We agree, of course, with the principle enunciated by the Supreme Court in *Wadley Southern Railway Co. v. Georgia, supra*, 235 U.S. at 661, 35 S.Ct. 215, that a right of judicial review is merely "nominal and illusory" if it must be exercised "only at the risk of having to pay penalties so great that it is better to yield to orders of uncertain legality rather than to ask for the protection of the law." But the legality of the orders here is entirely certain. The penalties are accruing in this case, if at all, only by virtue of noncompliance with perfectly valid administrative orders. At this stage the right of the government to impose fines and penalties for violation of the laws appears equally indisputable. As *Wadley* states, "there is no room to doubt the power of the state to impose a punishment heavy enough to secure obedience to such orders after they have been found to be lawful; nor to impose a penalty for acts of disobedience, committed after the carrier had ample opportunity to test the validity of administrative orders and failed so to do." 235 U.S. at 667, 35 S.Ct. at 220. *Cf. Calero-Toledo v. Pierson Yacht Leasing Co.*, 416 U.S. 663, 684–85 n. 24, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).

Appellants argue, of course, that it is the risk of huge accumulating penalties during the course of the enforcement proceedings in this case which calls into play the Supreme Court cases and requires the granting of the temporary relief sought. But while the cumulative aspect of Section 45(*l*) penalties is severe, *see United States v. J. B. Williams Co., supra*, 498 F.2d at 435–36, it very plainly was the view of Congress that such cumulative penalties might be the only way to enforce FTC orders in the face of profitable, repeated or continuing violations. See 96 Cong.Rec. 2974 (1950) (remarks of Congressman Cooley); *id.* at 2981 (remarks of Congressman Posage); *id.* at 3018–19 (remarks of Senator George); *id.* at 3025 (remarks of Senator Aiken). The legislative history of the Act, according to *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 231, 95 S.Ct. 926, 932, 43 L.Ed.2d 148 (1975),

> makes clear that Congress was concerned with avoiding a situation in which the statutory penalty would be regarded by potential violators of FTC orders as nothing more than an acceptable cost of violation, rather than as a deterrence to violation. For example, Senator Aiken, chief proponent of the 1950 amendment, said that if daily penalties for certain violations of the Federal Trade Commission Act were not permitted, "the fine would amount to a license in the amount of $5,000 for misrepresentation, which would be a very cheap fine, indeed."

The cumulative penalty sections of Section 45(*l*) were held to be fair in *ITT Continental Baking Co.* because they were reasonably related to deterring cumulative violations of FTC orders in two situations: first, where detriment to the public and the advantage to the violator increases with delay of enforcement; and, second, where there exists a continuing ability on the part of the violator to eliminate the effects of his violation if so motivated. 420 U.S. at 232–33, 95 S.Ct. 926. We are satisfied, therefore, that § 45(*l*) cumulative penalties are not violative of due process under the circumstances of this case and that appellants are not entitled to a stay of

penalties as a matter of law. We may point out in passing that while § 45 penalties are cumulative, they are also subject to the limitation of judicial discretion upon the penalties imposed.[8] Moreover, our own decision in *United States v. J. B. Williams Co., supra,* held that in any penalty action there is a right to jury trial on contested issues of fact.

 Appellants also argue that even under the district court's approach of treating the motion for a stay as an application for preliminary injunction they are entitled to relief. We need not again set forth our settled rule that to obtain such relief the litigant must either demonstrate a combination of probable success on the merits and the possibility of irreparable injury or, in the alternative, that he has raised serious questions going to the merits and that the balance of hardships tips "decidedly" in his favor. *San Filippo v. United Brotherhood of Carpenters and Joiners of America,* 525 F.2d 508, 511 (2d Cir. 1975), 6387, 6392; *Stamicarbon, N. V. v. American Cyanamid Co.,* 506 F.2d 532, 536 (2d Cir. 1974). Ultimately these motions are addressed to the discretion of the district court and its decision should not be disturbed unless an abuse of discretion is shown. In this regard, and particularly in this type of case, we must recall that courts of equity may go much further both to give or to withhold relief in furtherance of the public interest than where only private interests are involved. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 156, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Yakus v. United States,* 321 U.S. 414, 441, 64 S.Ct. 660, 88 L.Ed. 834 (1944); *Gulf & Western Industries, Inc. v. Great Atlantic & Pacific Tea Co.,* 476 F.2d 687, 699 (2d Cir. 1973).

We agree with Judge Tenney below that appellants have doubtless posed a serious question on the merits. However, the limitations on the imposition of Section 45(1) penalties which we have discussed above, *see, e. g., Floersheim v. Engman,* 494 F.2d 949, 953 (D.C.Cir. 1973) ("There is room for leniency by the court, if petitioner's view of the meaning of the order is plausible and not defiant"), coupled with the strong public interest militating against the stay, preclude any finding that appellants have met their burden of showing that the equities tipped decidedly in their favor. We agree with the court in *Floersheim v. Engman, supra,* that the "equitable limitations inherent in the Government's remedies are a substantial protection for a respondent with a reasonable and bona fide claim." *See* note 8 *supra.* We also are of the view that if appellants' interpretation of the consent orders is incorrect, granting the stay would infringe the public interest in receiving adequate warnings on the hazards of cigarette smoking. We put no stock in the intimation in the appellants' brief that the public interest is not involved because Congress has specifically required warnings on cigarette packages but not on

---

8. Indicative of this are the following statements from the floor which attended passage of the 1950 Amendment to 15 U.S.C. § 45(1):

> [I]t is inconceivable to me that any Federal court would impose penalties under this section which are not reasonably related both to the seriousness of the offense charged and the size and resources of the defendant. 96 Cong.Rec. 2974, 3026 (1950) (letter from W. T. Kelley, General Counsel, FTC, to Senator Fulbright).

> In no event would the court sanction any unreasonable penalty, or any such total penalty as would be destructive of legitimate business. So, therefore, I do not think there is any real danger here to legitimate business.

96 Cong.Rec. 3019 (1950) (remarks of Senator George).

The courts have recognized the limitation inherent in this section. *See United States v. ITT Continental Baking Co.,* 420 U.S. 223, 229 n. 6, 95 S.Ct. 926, 930 (1975) (". . . the statutes prescribe no minimum penalty, and the District Court has discretion to determine the amount of the penalty for each violation whether the transactions are construed as single or as continuing violations"). *See also United States v. J. B. Williams Co.,* 498 F.2d 414, 438 (2d Cir. 1974); *Floersheim v. Engman,* 494 F.2d 949, 952–54 (D.C.Cir. 1973); *Ford Motor Co. v. Coleman,* 404 F.Supp. 475 at 489 (D.D.C.1975).

**1122**

advertising. *See* note 2 *supra.* Nowhere has Congress suggested that the FTC should not continue to handle the matter of cigarette advertising, and deceptive advertising practices in general, within the confines of its existing complaint procedures under Section 45. *See* note 2 *supra.* It may be, as appellants claim, that the Commission's views on noncompliance relate to alleged "minuscule variations in type size and type style" and "to technical aspects" of the consent orders, but the Surgeon General's warning is a serious message which substantially affects the public interest. Noncompliance with the Commission's order is not a matter lightly to be endured.

Judgment affirmed.