446 F.Supp. 193 (1978)
NATIONAL COALITION FOR PUBLIC EDUCATION AND RELIGIOUS LIBERTY et al., Plaintiffs,
v.
Joseph A. CALIFANO, Secretary of the United States Department of Health, Education and Welfare, et al., Defendants,
and
James Bovis et al., Intervenors-Defendants,
and
Philip Fenster et al., Intervenors-Defendants.
No. 76 Civ. 888 (CHT).
United States District Court, S. D. New York.
March 3, 1978.
*194 Leo Pfeffer, New York City, for plaintiffs.
Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, New York City by Michael H. Dolinger, Asst. U. S. Atty., New York City, for defendants Califano and Boyer.
W. Bernard Richland, Corp. Counsel, City of New York, New York City by Beryl Kuder, Asst. Corp. Counsel, New York City, for defendant Anker.
Williams & Connolly, Washington, D. C., Martin, Obermaier & Morvillo, New York City by Edward Bennett Williams, Charles H. Wilson, Pierce O'Donnell, Washington, D. C., John S. Martin, Jr., New York City, for intervenors-defendants Bovis, et al.
National Jewish Commission on Law and Public Affairs, Brooklyn, N. Y. by Dennis Rapps, Brooklyn, N. Y., for intervenors-defendants Fenster, et al.
Before VAN GRAAFEILAND, Circuit Judge, and TENNEY and BRODERICK, District Judges.

MEMORANDUM
TENNEY, District Judge.
In this action challenging the use of funds provided by the federal government to localities under Title I of the Elementary and Secondary Education Act of 1965 ("Title I"), 20 U.S.C. §§ 241a et seq., the plaintiffs, National Coalition for Public Education and Religious Liberty ("PEARL") and certain individual taxpayers, have moved for a preliminary injunction and for summary judgment. For the reasons stated below, these motions are denied. Plaintiff Albert Shanker has also moved for leave to withdraw as a plaintiff; his motion is granted.
Title I was enacted in 1965 to "bring better education to millions of disadvantaged youth who need it most." S.Rep. No. 146, 89th Cong., 1st Sess., reprinted in [1965] U.S.Code Cong. & Admin.News 1446, 1450. To achieve this end, the United States Commissioner of Education is authorized to make grants to local educational agencies according to certain established formulae. 20 U.S.C. § 241c. The program is to include the "educationally deprived children in the school district of the local educational agency who are enrolled in private elementary and secondary schools." Id. § 241e-1(a). In this context it should be noted that the Supreme Court has held that state authorities must seek to include students attending parochial schools in their Title I programs notwithstanding the logistical and constitutional problems inherent in providing services to such students. Wheeler v. Barrera, 417 U.S. 402, 94 S.Ct. 2274, 41 L.Ed.2d 159 (1974).

*195 History of the Action

In 1966, more than a year-and-a-half after the passage of Title I a taxpayer suit challenging the use of Title I, funds to finance educational services in religious schools was instituted by a group of plaintiffs, two of whom are also now before this Court as plaintiffs. That action was dismissed for lack of standing by a three-judge court, Flast v. Gardner, 271 F.Supp. 1 (S.D. N.Y.1967); the Supreme Court reversed in a well-known decision. Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). The action was pursued no further on remand, however, for the Flast plaintiffs had concluded, on the advice of their counsel (who is also representing the plaintiffs in the instant action), that the case should not be pursued "until the position of the Supreme Court on the contested issue was clarified." Affidavit of Leo Pfeffer, sworn to October 26, 1977, ¶ 7 ("Pfeffer Affidavit").
Some years lateron May 19, 1975the Supreme Court decided Meek v. Pittenger, 421 U.S. 349, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975), holding unconstitutional certain aspects of a Pennsylvania state program of aid to predominantly church-related schools. This decision caused counsel for the plaintiffs to conclude that the time was ripe for further pursuit of the old claim. Accordingly, he wrote to and subsequently met with the Commissioner of Education, urging the discontinuance of the practice of "assigning teachers paid with federal funds to perform educational services in religious schools during regular school hours." Pfeffer Affidavit ¶¶ 9-10. When the plaintiffs received no response to their request for action, they instituted this suit in February 1976.

Preliminary Injunction
We do not feel that a preliminary injunction is warranted in this case. As the United States Court of Appeals for the Second Circuit recently emphasized, the plaintiff seeking a preliminary injunction "has a basic obligation . . . to make a clear showing of the threat of irreparable harm. That is a fundamental and traditional requirement of all preliminary injunctive relief." Triebwasser & Katz v. American Tel. & Tel. Co., 535 F.2d 1356, 1359 (2d Cir. 1976). The manner in which this action has been prosecuted reveals the absence of such irreparable harm to these plaintiffs: they waited eleven years from the enactment of Title I, eight years from the decision in their favor in Flast v. Cohen, supra, and 20 months from the commencement of this action to request a preliminary injunction. No mention of preliminary injunctive relief was made to the Court in the pretrial conference held on October 12, 1977.
Moreover, if the absence of irreparable harm to these plaintiffs is compared to the hardship which an injunction would cause to the defendants in this case, the inappropriateness of a preliminary injunction becomes even clearer. In New York City alone, Title I funds to be expended for the current academic year (1977-78) amount to more than $10,000,000; services are being provided to over 13,000 pupils through the employment of more than 400 persons. Affidavit of Lawrence F. Larkin, sworn to November 21, 1977, ¶¶ 4, 8-9. To halt this program in the middle of an academic year, at a time which can only be deemed arbitrary in light of the history of this litigation, would be to work an unwarranted hardship on these defendants. Such relief would also harm the public interest in the continuity of educational programs, a factor which must also be weighed by this Court. See Brown & Williamson Tobacco Corp. v. Engman, 527 F.2d 1115, 1121 (2d Cir. 1975), cert. denied, 426 U.S. 911, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976). Accordingly, the plaintiffs' request for a preliminary injunction is denied.

Summary Judgment
Plaintiffs argue that they are entitled to summary judgment because the Supreme Court twice "has faced the constitutional question raised in this case, and in both instances it has ruled the challenged statute unconstitutional on its face." Plaintiffs' *196 Memorandum 2, relying on Meek v. Pittenger, 421 U.S. 349, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975), and Public Funds for Public Schools v. Marburger, 358 F.Supp. 29 (D.N.J.) (three-judge court), aff'd mem., 417 U.S. 961, 94 S.Ct. 3163, 41 L.Ed.2d 1134 (1974). In both these cases, the plaintiffs contend, the Court invalidated state statutes "fashioned after the federal statute challenged herein." Plaintiffs' Memorandum 2. Therefore, the argument goes, the Supreme Court's rulings in the Meek and Public Funds cases also mandate the invalidation of this statute on its face and without further examination of its application.
There are several flaws in the plaintiffs' reasoning, however. First, the plaintiffs' challenge is not to this statute on its face: rather, they challenge Title I only "insofar as [it] authorizes the expenditure of federal funds to finance educational services within religious schools during school hours." Notice of Motion ¶ 3. The limited nature of this challenge to a particular application of the statute necessarily demands that this Court be fully informed on the exact manner in which these Title I funds are used, in order both that the Court may understand and evaluate the alleged constitutional improprieties of this use of Title I funds and that the Court may shape a suitable injunctive order should such improprieties be found.
Second, as the Supreme Court has noted,
The task of deciding when the Establishment Clause is implicated in the context of parochial school aid has proved to be a delicate one for the Court. Usually it requires a careful evaluation of the facts of the particular case. It would be wholly inappropriate for us to attempt to render an opinion on the First Amendment issue when no specific plan is before us. A federal court does not sit to render a decision on hypothetical facts . . ..
Wheeler v. Barrera, supra, 417 U.S. at 426-27, 94 S.Ct. at 2288 (citations omitted). In evaluating a first amendment challenge, a court must examine, inter alia, whether "the statute and its administration [avoid] excessive entanglement with religion." Meek v. Pittenger, supra, 421 U.S. at 358, 95 S.Ct. at 1760 (emphasis added). Such an examination is not possible on the current record.
Thus, notwithstanding the statements of the plaintiffs to the effect that they will not challenge any facts which the defendants wish to put on the record, see, e. g., Letter of Leo Pfeffer to Edward Bennett Williams, dated October 31, 1977, the Court must deny the plaintiffs' motion for summary judgment and withhold decision on the issues raised by the plaintiffs until there has been a determination of all facts material to those issues.
In sum, the plaintiffs' motions for a preliminary injunction and for summary judgment are denied. Plaintiff Shanker's motion for leave to withdraw as a plaintiff is granted. The parties are directed to complete their discovery by April 1, 1978, and be prepared to present evidence thereafter according to the procedures earlier established by the Court.
So ordered.