# WASTE MANAGEMENT OF WISCONSIN, INC.,
Petitioner-Appellant-Petitioner,

v.

State of Wisconsin DEPARTMENT OF NATURAL RESOURCES, Respondent. [Case No. 87-1378.]

# WASTE MANAGEMENT OF WISCONSIN, INC.,
Petitioner-Appellant-Petitioner,

v.

State of Wisconsin DEPARTMENT OF NATURAL RESOURCES, Respondent. [Case No. 87-1429.]

Supreme Court

*Nos. 87-1378, 87-1429. Argued April 25, 1989.—Decided May 25, 1989.*

(Also reported in 440 N.W.2d 337.)

For the petitioner-appellant-petitioner there were briefs by *Robert H. Friebert, William S. Roush, Jr., Caren B. Goldberg* and *Friebert, Finerty & St. John, S.C.,* Milwaukee, and oral argument by *Robert H. Friebert.*

For the respondent the cause was argued by *Carl Sinderbrand,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

CALLOW, WILLIAM G., J.   This is a review of two decisions of the court of appeals involving the operation of two landfill sites. The decision regarding the operation of the Muskego landfill site is an unpublished decision. The decision regarding the operation of the Metro landfill site is published as *Waste Management of Wisconsin, Inc. v. Department of Natural Resources,* 145 Wis. 2d 495, 427 N.W.2d 404 (Ct. App. 1988). In each case the decision affirmed an order of the Milwaukee County Circuit Court, Judge Clarence R. Parrish and Judge George A. Burns, Jr., dismissing Waste Management's petition for judicial review of a

Department of Natural Resources (DNR) decision, and remanding the matter to the DNR so that it would make findings of fact and conclusions of law as required by sec. 227.47, Stats.[1]

We address four issues in these cases. The first two issues apply to both cases. The remaining two issues apply only to the Metro site case. The first issue is whether Waste Management is entitled to a contested case hearing under sec. 227.01(3), Stats.,[2] in which it could challenge the DNR's modification of Waste Management's plan of operation. The second issue is whether, if it is not entitled to such a contested case hearing, Waste Management is denied the equal protection of the laws. The third issue is whether the DNR deprived Waste Management of due process because the DNR issued its plan modification for the Metro site without giving Waste Management notice or a hearing, contrary to the rule set forth in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). The final issue is whether the DNR deprived Waste Management of due process in the Metro site case by compelling Waste Management to either comply with the plan modification or risk a substantial fine, contrary to the rule set forth in *Ex parte Young*, 209 U.S. 123 (1908).

---

[1]Section 227.47, Stats., provides in relevant part:

[e]very proposed or final decision of an agency or hearing examiner following a hearing and every final decision of an agency shall be in writing accompanied by findings of fact and conclusions of law.

[2]Section 227.01(3), Stats., provides in relevant part:

"[c]ontested case" means an agency proceeding in which the assertion by one party of any substantial interest is denied or controverted by another party and in which, after a hearing required by law, a substantial interest of a party is determined or adversely affected by a decision or order.

We conclude that Waste Management is not entitled to a contested case hearing in these cases. We further conclude that Waste Management is neither deprived of equal protection nor due process in these cases.

Waste Management operates the Muskego and Metro landfill sites pursuant to licenses and approved plans of operation issued by the DNR. The controversy regarding the operation of the Muskego site began on December 14, 1983, when the DNR sent a letter to Waste Management approving a report submitted by Waste Management certifying that it had constructed a portion of its Muskego site in substantial conformance with the approved plan of operation. The letter stated that the report was approved subject to certain conditions and recommendations. It set forth the following requirements: (a) a requirement to perform Proctor curves, specialized soil tests, on every five thousand cubic yards of clay placed in the site during construction; (b) a requirement to clean the leachate collection system annually; and (c) a requirement to redesign a manhole and to provide for a leachate collection tank. It also included a recommendation to remove a surface water diversion berm.

The controversy regarding the operation of the Metro site began on August 28, 1984 when the DNR sent a letter to Waste Management approving Waste Management's redesign of an area of its Metro site. The DNR approved the plan modification subject to twenty conditions and recommendations relating to such things as site alterations, testing and monitoring.

Waste Management timely filed a petition for judicial review of the DNR's actions in each case. It filed its petition regarding plan of operation modification of the Muskego site on January 13, 1984 in the

Milwaukee County Circuit Court. On December 31, 1986, Waste Management filed a motion for summary reversal or judgment on the pleadings contending that it had received no notice or opportunity to be heard regarding the plan modification of the Muskego site, in violation of the United States and Wisconsin Constitutions and Wisconsin statutes. On February 27, 1987, the DNR filed a motion for an order remanding the matter to the DNR and dismissing the petition. It agreed that it had not made the findings of fact and conclusions of law required by sec. 227.47, Stats.

On June 29, 1987, the circuit court, Judge Clarence R. Parrish, granted the DNR's motion, dismissed the petition and remanded the matter to the DNR to allow the DNR to make findings of fact and conclusions of law.

Waste Management likewise filed a petition for judicial review of the DNR's modification of the Metro site plan of operation on September 27, 1984 in the Milwaukee County Circuit Court. It filed an amended petition on November 9, 1984. On December 22, 1986, Waste Management filed a motion for judgment of summary reversal or judgment on the pleadings contending that the DNR had given it no notice or opportunity to be heard regarding the plan modification, in violation of the United States and Wisconsin Constitutions and Wisconsin statutes. The DNR countered on January 30, 1987 with a motion for an order remanding the matter to the DNR and dismissing the petition. It argued that the disposition of the case was controlled by this court's decision in *Waste Management of Wisconsin, Inc. v. Wisconsin Department of Natural Resources,* 128 Wis. 2d 59, 381 N.W.2d 318 (1986) (*Waste Management I*), and the principles of collateral estoppel.

On July 8, 1987, the circuit court, Judge George A. Burns, Jr., issued an order dismissing Waste Management's amended petition and remanded the matter to the DNR. In its conclusions of law the circuit court determined that the DNR's actions impaired Waste Management's property interest in its operating license. It determined that due process requirements would be met by a process of correspondence followed by an opportunity for judicial review. It also determined that, in order to have meaningful judicial review, the DNR must make findings of fact and conclusions of law. Finally, the court determined that sec. 227.01, Stats., was a definitional section and did not create a right to a contested case hearing.

Waste Management appealed the order in each of the cases. The cases were not consolidated at the court of appeals level and therefore the court of appeals issued separate opinions for the two cases. However, the opinions addressed the same five issues and resolved them in the same way.[3] In each case the court of appeals first determined that Waste Management has a property interest in its licenses which merits due process protection. *Waste Management,* 145 Wis. 2d at 498. Due process, according to the court of appeals, requires that Waste Management be given an opportunity to present reasons, either in person or in writing, why the DNR's proposed action should not be taken. *Id.* at 499. It ordered that Waste Management in each case be given an opportunity to respond to the proposed modifications. *Id.* at 500.

Second, the court of appeals determined that Waste Management was not deprived of due process

---

[3]The citations below are to the published decision in the Metro case, *Waste Management of Wisconsin, Inc. v. Department of Natural Resources,* 145 Wis. 2d 495, 427 N.W.2d 404 (Ct. App. 1988).

because of the threat of enforcement of the proposed modifications. *Id.* It held that Waste Management has an adequate opportunity to test the validity of the modifications under Chapter 227, Stats. *Id.*

Third, the court of appeals rejected Waste Management's contention that it was entitled to a contested case hearing pursuant to sec. 227.01, Stats., finding that the actions did not meet the definitional requirements of a contested case. *Id.* at 501.

Fourth, the court of appeals held that Waste Management was not denied equal protection of the law. *Id.*

Finally, the court of appeals rejected Waste Management's claim that the modifications should be reversed, vacated and set aside. It determined that, pursuant to sec. 227.57(4), Stats., it should remand the cases to the DNR so that it could make findings of fact and conclusions of law. *Id.* at 502–3.

On September 13, 1988, we granted Waste Management's petition for review in each of the cases. On November 8, 1988, we granted the DNR's motion to consolidate the two actions.

The first issue we consider is whether Waste Management is entitled to a contested case hearing under sec. 227.01(3), Stats. Waste Management insists that sec. 227.01(3) creates a right to a contested case hearing and that Waste Management meets all of the provision's requirements for such a hearing. It focuses particularly on the requirement that the denial of an assertion of a substantial interest be "after a hearing required by law." Section 227.01(3). Based upon *Waste Management I,* it claims it is entitled under the due process clause to an opportunity to be heard. It further claims that this opportunity to be heard qualifies as a "hearing" in sec. 227.01(3). Waste Management bases

its claim upon the following statement in *Nick v. State Highway Commission,* 21 Wis. 2d 489, 495, 124 N.W.2d 574 (1963): "the reference to a 'hearing required by law' presupposes either (1) a hearing expressly provided for by the regulating statute or administrative rule, or (2) a hearing necessitated constitutionally by the requirements of due process."

Before we may consider the validity of this interpretation of sec. 227.01(3), Stats., we must first determine whether Waste Management is correct in its assertion that it is entitled to a due process opportunity to be heard. Only if Waste Management is entitled to an opportunity to be heard can it pursue its contention that this opportunity satisfies the requirement of a hearing under sec. 227.01(3). In order for Waste Management to be entitled to an opportunity to be heard under the due process clause, it must show that the DNR has infringed a property right which merits due process protection. It is unable to do so in this case.

We begin our analysis of this issue with a discussion of this court's decision in *Waste Management I.* In that case, Waste Management contended that it was entitled under the due process clause to a hearing based on the DNR's actions regarding two waste disposal sites. At the Metro site the DNR had denied Waste Management's request for a modification of a feasibility determination. *Waste Management I,* 128 Wis. 2d at 64. At the Omega Hills site the DNR had imposed certain requirements on Waste Management's plan of operation. *Id.*

We held that Waste Management had no property interest protected under the due process clause in its approval of the feasibility determinations. *Id.* We also held that Waste Management had no protected property interest in its approved plan of operation. *Id.* at 65.

We determined that it did, however, have a protected property interest in its license to operate the facility. *Id.* Therefore, Waste Management was entitled to due process protection only to the extent a modification of the approved plan affected its license. *Id.*

Later in the opinion we discussed the type of modification that would affect Waste Management's interest in its license:

> The license, however, remains conditioned '... upon compliance with the provisions of any plan approval and subsequent modifications thereof ...' and does not create in Waste Management a legitimate claim of entitlement to operate the Omega Hills site free from any modifications. Rather, the license creates in Waste Management a legitimate claim of entitlement to operate the site free only from modification of the conditions regarding the construction of the site. We hold, therefore, that Waste Management's interest in its license to operate the Omega Hills site constitutes a property interest which merits due process protection to the extent that Waste Management is legitimately entitled to operate its Omega Hills site free from modification of the conditions of construction.

*Id.* at 77. We interpret the holding of *Waste Management I,* then, to provide that Waste Management is not entitled to due process protection in these cases unless the DNR's requirements modify the construction requirements which were a condition for licensure and thus impair Waste Management's property interest in its licenses.

Waste Management has not demonstrated that the proposed modifications affect its license in these cases. As Waste Management's counsel stated at oral argu-

ment thousands of modifications are implemented. It appears that these modifications are among the many modifications which neither interfere with Waste Management's license nor implicate the due process clause. These modifications involved additional testing and reporting requirements and some site alteration requirements. But Waste Management has simply failed to demonstrate that any of these modifications affected the construction requirements which were a condition for licensure, and that its interest in its licenses was impaired.

Having reached this conclusion, we need not address Waste Management's contention that it is entitled to a contested case hearing. Waste Management has failed to demonstrate that it is entitled to a constitutional opportunity to be heard in these cases.

The second issue we address which also applies to both cases is whether, if Waste Management is not granted a contested case hearing under sec. 227.01(3), Stats., it is denied the equal protection of the laws. Waste Management insists that it is denied equal protection, pointing out that its solid waste disposal facilities are treated differently from wastewater treatment facilities such as that of the Milwaukee Metropolitan Sewerage District under Chapter 227. It notes that in *Milwaukee Metropolitan Sewerage District v. Department of Natural Resources,* 126 Wis. 2d 63, 75–76, 375 N.W.2d 648 (1985), the Sewerage District was granted a contested case hearing under sec. 227.064 (now sec. 227.42) to challenge the conditions the DNR placed on its approval of the Sewerage District's proposed storage facilities plan. Waste Management insists that equal protection mandates that it be given a contested case hearing as well because it seeks to protect what it considers to be an even greater interest

than that of the Sewerage District and that of others who are entitled to a contested case hearing under sec. 227.42.

Waste Management contends that the DNR's interpretation of sec. 227.01(3), Stats., deprives it of equal protection. This contention is without merit since, as the DNR correctly points out, sec. 227.01(3) has no bearing on the equal protection claim. The provision creating the classification distinguishing solid waste from wastewater operations is sec. 227.42. In reality, then, Waste Management challenges the constitutionality of secs. 227.42(3) and (5).

As we held in *Waste Management I,* sec. 227.064 (now sec. 227.42), Stats., grants a contested case hearing before an administrative agency to parties who meet its requirements, unless certain exceptions apply.[4] *Waste Management I,* 128 Wis. 2d at 85. Waste Management's solid waste facilities are excluded under the exceptions set forth in subsections (3) and (5). It insists that it is thereby denied equal protection of the law.

"All statutes are presumed to be constitutional, and the party attacking a statute must prove it uncon-

---

[4]Section 227.42(1), Stats., which sets forth the requirements for a contested case hearing, provides:

[i]n addition to any other right provided by law, any person filing a written request with an agency for hearing shall have the right to a hearing which shall be treated as a contested case if:

   (a)   A substantial interest of the person is injured in fact or threatened with injury by agency action or inaction;

   (b)   There is no evidence of legislative intent that the interest is not to be protected;

   (c)   The injury to the person requesting a hearing is different in kind or degree from injury to the general public caused by the agency action or inaction; and

   (d)   There is a dispute of material fact.

stitutional beyond a reasonable doubt." *North Side Bank v. Gentile,* 129 Wis. 2d 208, 220, 385 N.W.2d 133 (1986). In addition, a challenged classification will be upheld if there is:

> a rational basis to justify the inequality of the classification. Any reasonable basis for the classification will validate the statute. A statute will be declared violative of equal protection only when the legislature has made an irrational or arbitrary classification ....

*Milwaukee Brewers Baseball Club v. Department of Health & Social Services,* 130 Wis. 2d 79, 99, 387 N.W.2d 254 (1986). We find that there is a rational basis for the classifications found in secs. 227.42(3) and (5), Stats.

Section 227.42, Stats., began as Assembly Bill 163 of 1975. The Judicial Council notes accompanying the bill stated that the provision was a supplement "intended to fill in some gaps where hearing rights ought to be provided but there is no specific authorization in the statutes." Judicial Council Notes to 1975 Wis. Laws 414. Given this purpose of sec. 227.42, subsection (3), creates a rational classification. It furthers the purpose of the statute by excluding from the scope of the provision actions for which hearing rights are provided elsewhere. Section 227.42(3) provides: "[t]his section does not apply to rule-making proceedings or rehearings, or to actions where hearings at the discretion of the agency are expressly authorized by law." Because the DNR has the discretionary authority to hold a hearing in this action under sec. 144.431(2)(a), this action is rationally and appropriately excluded from the scope of sec. 227.42(3).

Likewise, the classification created in sec. 227.42(5), Stats., is rational and the provision does not violate the equal protection clause. Section 227.42(5) provides in relevant part:

> [e]xcept as provided under s. 144.44(2)(m), this section does not apply to any part of the process for approving a feasibility report, plan of operation or license under s. 144.44 or 144.64 ....

Waste Management argues that this provision violates equal protection because it expressly excludes from the statute's grant of contested case hearing rights actions brought during solid waste facilities' licensing approval process under sec. 144.44 while it does not exclude actions brought by wastewater treatment facilities gaining approval under sec. 144.04.

Section 227.42(5), Stats., was created as part of Chapter 144 which at the same time created a complicated and detailed process for the licensing of solid waste facilities. 1981 Wis. Laws 374. By comparison, sec. 144.04 provides for a relatively simply one-step process for the licensing of wastewater facilities. The procedure described in sec. 144.44, unlike the one established in sec. 144.04, sets forth its own hearing requirements including the right to a contested case hearing at the original feasibility determination stage. Section 144.44(2r). Thus, it is not irrational, given the specialized nature of the approval process, for the legislature to govern solid waste facilities under their own statute-specific hearing process. We conclude that the classifications set forth in secs. 227.42(3) and (5) are rational and constitutional.

The third and fourth issues apply only to the DNR's actions with regard to the Metro site. The third issue is whether Waste Management is deprived of due

process because the DNR issued its modification of the plan of operation without providing Waste Management notice or a hearing. Waste Management contends that the procedure revoked or modified its property right in its license. It insists that such an action was held to violate due process by the United States Supreme Court in *Loudermill,* 470 U.S. at 541.

*Loudermill* held that when a state grants a property right it cannot deprive an individual of that right without providing proper procedures based upon the principles of due process. *Id.* The court declared the state cannot simply incorporate into the definition of the property right created "the procedures provided for its deprivation ...." *Id.* We find this doctrine to be inapplicable to this case because, as we held earlier, Waste Management has not demonstrated that the DNR's actions have affected Waste Management's property interest in its license.

The final issue is whether the DNR has violated the due process clause by compelling Waste Management to either comply with the plan modification or risk a substantial fine. Waste Management insists that, under the principle of *Young,* 209 U.S. at 147–48, there must be an opportunity to challenge an agency's action prior to the accrual of debilitating penalties. It claims that it was denied such an opportunity in this case.

The *Young* requirement "is satisfied by a statutory scheme which provides an opportunity for testing the validity of statutes or administrative orders without incurring the prospect of debilitating or confiscatory penalties." *Brown & Williamson Tobacco Corp. v. Engman,* 527 F.2d 1115, 1119 (2d Cir. 1975). Waste Management has such an opportunity in this case. As the court of appeals correctly noted, Chapter 227, Stats., provides an adequate opportunity for review of

agency actions without the risk of incurring substantial penalties. *Waste Management,* 145 Wis. 2d at 500. Indeed, sec. 227.54[5] provides that a reviewing court may stay the proceedings if it determines that a stay would be appropriate. Waste Management has not been deprived of due process of law.

Based upon the foregoing reasons we affirm the decisions of the court of appeals and remand the case to the DNR so that it may provide Waste Management an opportunity to present reasons why the proposed actions should not be taken and so that the DNR will incorporate into its decisions the statutorily required findings of fact and conclusions of law.

*By the Court.*—The decisions of the court of appeals are affirmed.

---

[5]Section 227.54, Stats., provides:

[t]he institution of the proceeding for review shall not stay enforcement of the agency decision. The reviewing court may order a stay upon such terms as it deems proper, except as otherwise provided in ss. 196.43 and 551.62.