**MARINE WONDERLAND & ANIMAL PARK, LTD., et al., Appellants,**

v.

**Juanita M. KREPS, Secretary of Commerce of the United States, et al.**

No. 78–1676.

United States Court of Appeals, District of Columbia Circuit.

Argued April 30, 1979.

Decided Sept. 19, 1979.

---

William B. Lawless, New York City, with whom William A. Mooney, Washington, D. C., was on the brief, for appellants.

Michael W. Reed, Atty., Dept. of Justice, Washington, D. C., a member of the bar of the Supreme Court of Washington, pro hac vice, by special leave of court, with whom James W. Moorman, Asst. Atty. Gen., and Bruce C. Rashkow, Atty., Dept. of Justice, Washington, D. C., were on the brief, for appellees.

Before TAMM and MacKINNON, Circuit Judges, and AUBREY E. ROBINSON, Jr.,[*] United States District Judge for the District of Columbia.

Opinion Per Curiam.

PER CURIAM:

In this case, we review the dismissal by the district court (Gesell, J.) of appellants'[1] action to enjoin federal officials[2] from continuing administrative proceedings against appellants for their alleged importation of marine mammals into the United States, in violation of the Marine Mammal Protection Act of 1972 (Act).[3] We affirm.

I

Appellants Marine Wonderland & Animal Park, Ltd. (Marineland) and John Holer chartered a plane to transport eight bottlenose dolphins captured under Mexican law

---

[*] Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. Appellants are: Marine Wonderland & Animal Park, Ltd., a Canadian amusement and recreational complex which, among other things, presents shows featuring trained dolphins; John Holer, Marineland's president and sole shareholder; William J. Roberts, a dolphin trainer employed by Marineland; and Lynn D. Shawver, a Marineland bookkeeper.

2. Appellees are: Charles Fuss, Jr., the Special Agent-In-Charge of the National Marine Fisher-

ies Service's Law Enforcement Division; William Stevenson, a Regional Director of the National Marine Fisheries Service (NMFS), and Robert Schoning, the Director of the NMFS, which is within the National Oceanic and Atmospheric Administration (NOAA); Richard Frank, the Administrator of the NOAA, which is within the Department of Commerce; and Juanita Kreps, the Secretary of the Department of Commerce.

3. 16 U.S.C. §§ 1361–1384, 1401–1407 (1976).

from Mexico to Canada. While the plane[4] was flying at a low altitude over Texas, the Federal Aviation Administration requested it to land and to clear customs.[5] Customs inspection revealed the dolphins, two of which the National Marine Fisheries Service allowed Holer to retain after he telephonically acknowledged that the animals were still in the seizure of the United States government, consented to federal jurisdiction, and agreed to make himself available for future administrative or judicial process in the United States. Joint Appendix at 39–44.

Upon receipt of subsequent notices of violations of the Act,[6] appellants instituted the action below to enjoin administrative proceedings before the National Oceanic and Atmospheric Administration (NOAA or agency). The district court recognized the agency's primary jurisdiction and granted appellees' motion to dismiss. This appeal followed.

## II

It is a "long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). *See also Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 24, 57, 45 L.Ed.2d 522 (1975); *FPC v. Louisiana Power & Light Co.*, 406 U.S. 621, 647, 92 S.Ct. 1827, 32 L.Ed.2d 369

(1972). Courts will not require exhaustion, however, when: (1) a clear jurisdictional defect is apparent; and (2) exhaustion will involve irreparable injury.[7] 3 K. Davis, Administrative Law Treatise § 20.01, at 56 (1958).

Appellants allege that the proceedings before the NOAA are jurisdictionally defective in that: (1) the agency does not have subject matter jurisdiction over the alleged violations; and (2) personal jurisdiction over Canadian appellants Marineland and Holer is lacking.

As a general rule, an agency should make the initial determination of its jurisdiction. "'While the [agency's] decision is not the last word, it must assuredly be the first.'" *FPC v. Louisiana Power & Light Co.*, 406 U.S. at 647, 92 S.Ct. at 1842 (quoting *Marine Engineers Beneficial Association v. Interlake Steamship Co.*, 370 U.S. 173, 185, 82 S.Ct. 1237, 8 L.Ed.2d 418 (1962)). Absence of agency jurisdiction in the case at bar is not clear. It is clear, however, that agency jurisdiction depends upon its determination of issues of law and fact.

Whether the agency has subject matter jurisdiction over the alleged violations hinges upon whether appellants' actions constitute an "importation" under the Act.[8] NOAA, which is charged with the administration of the Act, must be accorded first opportunity to interpret the meaning of "importation."[9] NOAA, as fact-finder and record-builder, is also best suited to deter-

---

4. Appellants Roberts and Shawver were passengers on the plane.

5. According to 19 C.F.R. § 6.2(b) (1978), any aircraft entering United States air space is required to give advance notice of arrival. The plane had crossed the Texas-Mexican border without advance notice. Holer asserts that he intended the flight to be nonstop, and implicitly, above United States air space.

6. The notices of violation charge appellants with violating §§ 101(a), 102(a)(2)(B), and 105 of the Marine Mammal Protection Act of 1972 (Act), respectively, 16 U.S.C. §§ 1371(a), 1372(a)(2)(B), 1375 (1976).

7. *Renegotiation Bd. v. Bannercroft Co.*, 415 U.S. 1, 24, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974);

*Sears, Roebuck & Co. v. NLRB*, 153 U.S.App. D.C. 380, 382, 473 F.2d 91, 93 (1972).

8. Specifically, appellants are charged with "importation" of marine mammals in violation of certain sections of the Act, cited in note 6 *supra.*

9. The Supreme Court often has emphasized that the expertise of the responsible agency is entitled to great deference in matters of statutory construction. *See, e. g., Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413–14, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945).

mine factual issues.[10] For example, appellants raise the legal issue whether intent is an essential element of importation and the factual issue whether appellants had such intent. Appellants also question whether bailors may be considered importers based on bailees' actions. The agency must resolve, in the first instance, these legal and factual determinations.

Whether personal jurisdiction over appellants is lacking also depends upon resolution of legal and factual disputes best left to the agency's primary consideration. Judicial interference must be withheld to allow NOAA to determine, *inter alia*, the following: whether the agents' importation subjects the principals to NOAA's jurisdiction; whether the agents acted beyond the scope of their authority; and whether appellants' actions created a sufficient nexus to support jurisdiction. Thus there is no clear jurisdictional defect, only clear jurisdictional disputes.

No irreparable injury will result if we entrust these jurisdictional disputes to NOAA for initial determination. "[T]he expense and annoyance of litigation is 'part of the social burden of living under government,'" and does not constitute irreparable injury. *Petroleum Exploration, Inc. v. Public Service Commission*, 304 U.S. 209, 222, 58 S.Ct. 834, 841, 82 L.Ed. 1294 (1938). Moreover, because the Act provides that penalties assessed by NOAA may only be collected through the courts, appellants are assured of judicial review of the agency's determination at an appropriate time. 16 U.S.C. § 1375(a) (1976).

### III

We find no patent lack of jurisdiction and no irreparable injury in the agency's initial determination of appellants' alleged violations and accompanying arguments. Accordingly, the district court's dismissal of appellants' action is

*Affirmed.*

10. "The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to

moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37, 92 S.Ct. 815, 818, 31 L.Ed.2d 17 (1972). *See also McGee v. United States*, 402 U.S. 479, 489–91, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971).