JOSEPH A. SHORBA, Appellant-Appellee, Cross-Appellant, *v.* BOARD OF EDUCATION, STATE OF HAWAII, Appellee-Appellant, Cross-Appellee

NO. 6126

JULY 28, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KOBAYASHI, J.

This is an appeal by both Joseph A. Shorba (hereinafter Shorba), appellant, cross-appellee, and the Board of Education, State of Hawaii (hereinafter Board),[1] appellee, cross-appellant.

_____

[1] HRS § 26-12 reads in pertinent part:

§26-12 Department of education. The department of education shall be headed by an executive board to be known as the board of education.

Under policies established by the board, the superintendent shall administer programs of education and public instruction throughout the State, including

Shorba appeals from the judgment of the trial court deny-ing his motion for reinstatement with full back pay to his position as a tenured teacher. The Board appeals from the judgment of the trial court requiring of the Board to afford Shorba a new hearing in accordance with HRS § 297-12 (1968).[2]

For reasons stated hereinafter we affirm the trial court's denial of Shorba's motion for reinstatement with full back pay, but reverse the trial court's order requiring the Board to afford Shorba a new hearing.

---

education at the preschool, primary and secondary school levels, adult edu-cation, library services, transcribing services for the blind, health education and instruction (not including dental health treatment transferred to the department of health), and such other programs as may be established by law.

.   .   .   .

[2] HRS § 297-12 reads in part:

§297-12 *Demotion or termination of contract by department*. In case of demo-tion or termination of any contract, the department of education shall furnish the teacher a written notice signed by the superintendent of education of its intention to consider the demotion or termination of his contract with full specification of the grounds for such consideration. Unless the teacher so notified, within ten days subsequent to the receipt of the notice, demands in writing an opportunity to appear before the department and offer reasons against the demotion or termi-nation, the department may proceed with formal action for demotion or termi-nation of the contract. If the teacher, within ten days after receipt of notice from the superintendent, demands in writing a hearing before the department, the department shall set a time for the hearing within thirty days from the date of the written demand and the superintendent shall give the teacher at least fifteen days' notice in writing of the time and place of the hearing. Chapter 91 shall apply to the notice and to all other aspects of the hearing. No hearing shall be held during the summer vacation without the teacher's consent. The hearing shall be private unless the teacher requests a public hearing. The hearing shall be conducted by a majority of the board of education and be confined to the grounds given for the termination. In lieu of a hearing by the board, the board may appoint a hearing officer to conduct hearings in any case regarding teacher demotion or termination of contract. The hearing officer shall hear the case in the same manner as if it were before the board and upon conclusion of the hearing, shall report his findings of fact and his conclusions and recommendations based thereon to the board and to the teacher. The board shall render the final decision in accordance with section 91-11. The department may suspend a teacher pend-ing final action to terminate his contract if, in its judgment, the character of the charges warrant such action.

.   .   .   .

## ISSUES

1.  Whether Rule 40.2[3] of the Rules and Regulations of the Board is in derogation of HRS § 298-16 (1968)[4] and, thus, null and void.

2.  Whether the Board in conducting the required hearing for dismissal of Shorba violated the provisions of HRS § 297-12 (1968), *supra*, note 2, thus, requiring of the Board to afford Shorba a new hearing in accordance with said statute.

3.  Whether Shorba is entitled to reinstatement with full back pay to his tenured position as a teacher.

## STATEMENT OF THE CASE

On October 4, 1974, Shorba appealed to the trial court for a judicial review of the Board's termination of Shorba's employment as a tenured teacher with the Board.

On June 13, 1975, Shorba filed a motion for judgment on appeal, seeking reinstatement with full back pay.

The trial court, on November 3, 1975, issued an order partially granting and partially denying appellant's motion for judgment on appeal, pertinent parts whereof being, to-wit:

A. The movant's motion insofar as it is based upon movant's position that Rule 40.2 of the Rules and Regulations

---

[3] Rule 40 reads:

Rule 40. *Relating to Punishment of Students.*

40.1 *General Rule.* Any teacher may administer punishment upon a student if it is necessary and reasonable.

40.2 *Corporal Punishment.* Since the striking of a child can have injurious after-effects, the use of corporal punishment to control pupil behavior shall be avoided whenever possible. If it is deemed necessary, it shall be administered by the principal in the presence of another professional adult, or by the teacher in the presence of the principal or of some other professional adult designated by the principal. Corporal punishment shall not be administered in the classroom in the presence of other children.

[4] HRS § 298-16 (1968) reads:

§298-16 Punishment of pupils. Any teacher may administer necessary and reasonable punishment upon any pupil while in attendance at school, and shall not in any way be held responsible therefor.

of the Department of Education is unconstitutional as in derogation of HRS § 298-16 (1968), is denied;

B. That movant's motion, insofar as it is based upon movant's position that the hearing afforded appellant, . . . was conducted in violation of HRS § 297-12 (1968) and hence, in violation of due process of law in that the evidence entertained and admitted therein exceeded the scope of the charges set forth in the Superintendent of Education's letter of May 14, 1971, is granted to the extent appellee, Board of Education, State of Hawaii, is hereby ordered to afford appellant a new hearing conducted in accordance with HRS § 297-12 (1968);

C. That all evidence received at the hearing to be conducted as hereinafter described shall be material and relevant to and otherwise confined to the charges specified in the Superintendent's letter of May 14, 1971, namely, charges of repeated violations of Departmental Rule 40.2, and, that no evidence shall be entertained or admitted with respect to the other possible grounds for suspension and/or termination of appellant's employment with the Department of Education unless said evidence is likewise material and relevant to the above described charges as well.

### STATEMENT OF FACTS

Shorba was a tenured teacher. The school year 1970-1971 was Shorba's first year at Lanikai Elementary School, Oahu, Hawaii, where he taught a fourth grade class.

On May 14, 1971, Shiro Amioka, Superintendent of the Department of Education (hereinafter Department), wrote Shorba informing him, *inter alia*, of the Department's intention to terminate his employment effective May 14, 1971.[5]

---

[5] The Superintendent's letter of May 14, 1971, read:

Dear Mr. Shorba:

I am in receipt of a recommendation for your termination as an employee in the State of Hawaii, Department of Education. The recommendation is derived from evidence of your personal conduct and performance and judgments made by the Principal of Lanikai Elementary School. The evidence submitted and the

As a result of a dispute between the parties herein, as to the timeliness and sufficiency of Shorba's demand for a hearing prior to termination, we held in *Shorba v. Amioka,* 54

resulting judgments have been reviewed by Dr. Albert Miyasato, District Superintendent, Windward Oahu District, after which your termination was recommended by him.

The charges, upon which the recommendation for your termination is based, are that you repeatedly committed willful violations of policies and regulations of the Department of Education (H.R.S. 297-11). Specifically, you are charged with repeated violations of Departmental Rule 40.2 *Corporal Punishment* which states:

"Since the striking of a child can have injurious aftereffects, the use of corporal punishment to control pupil behavior shall be avoided whenever possible. If it is deemed necessary, it shall be administered by the principal in the presence of another professional adult, or by the teacher in the presence of the principal or some other professional adult designated by the principal. Corporal punishment shall not be administered in the classroom in the presence of other children.

On January 15, 1971, Jim Davenport, a fourth grade student, while in attendance with other students in your class, was idly sitting and banging his feet against a bookshelf. You grabbed Jim and forcibly put a stop to Jim's actions. This resulted in the bruising of Jim's left knee.

On April 29, 1971, Jim Davenport, while chasing another student in your classroom was hit by you. The blow by you resulted in Jim falling to the floor.

On April 29 and 30, 1971, acting upon information provided by Mr. Joe Reedy, Lanikai School's PTA President, the following students verified being hit on the head by you approximately two weeks earlier.

Emil Haury, fourth grade student, while trying to get out of his seat because the Social Studies class was being noisy, was hit on the side of his head with a folded sheaf of book reports by you.

Mickey Mouldrich, also a fourth grade student, was talking to another student when he was hit on the head with the book reports by you. These two incidents occurred on the same day.

The series of known cases where you resorted to using physical force to control student behavior in the presence of other students, must be viewed as persistent violations of Departmental Rule 40.2. In view of the fact that you were specifically told not to use physical force on students in a conference with Mrs. Matsuko Machado on January 15, 1971, your actions, as cited, may also be viewed as being insubordinate.

This letter is official notification that I accept the recommendation for your dismissal as submitted to me. You are hereby advised of your right to a hearing before the Board of Education or a hearing officer appointed by the Board. You may contact the Windward District Office for clarification of your legal rights and Department procedures. Of course, you may retain counsel in this matter if you so desire. Specifically, you must respond in writing within ten (10) days of receipt of this letter requesting a hearing on your termination. Otherwise your termination will become effective as of May 14, 1971.

Haw. 43, 501 P.2d 807 (1973), that Shorba was entitled to a hearing as provided in HRS § 297-12, *supra* note 2. Judgment was entered on February 13, 1973.

On April 23, 1973, Shorba's attorney requested the hearing be set some time in late May of that year.

On June 1, 1973, Shorba filed a motion for further relief in the circuit court praying for reinstatement since no hearing had been held. On August 27, 1973, the circuit court denied the motion.

On March 1, 1974, the Board appointed Clinton Ching, Esq., as hearing officer (hereinafter Ching).

By letter dated March 22, 1974,[6] counsel for the De-

---

[6] Department counsel's letter dated March 22, 1974, read:

Re: *Termination hearing of Joseph A. Shorba*

Date:     March 27, 1974

Time:     1:30 p.m.

Place:    Office of Personnel Services
          Conference Room (Dept. of Education),
          Room 301, Queen Liliuokalani Bldg.
          1390 Miller Street, Honolulu, Hawaii

Before:   Clinton K. L. Ching, Esq.
          Hearing Officer

Dear Mr. Pico:

This hearing shall be held pursuant to HRS § 297-12 concerning the termination of Mr. Shorba's contract. Specifically, Mr. Shorba's termination is contemplated because of poor evaluation reports Mr. Shorba received and evidence of corporal punishment inflicted by him upon students in violation of Department of Education Rule 40.2 and subjecting Mr. Shorba to dismissal under School Code, Regulation 5110, prior to and during April 1971. These charges constitute violation of the policies and regulations of the Department of Education (HRS § 297-11).

The facts to be relied on are evaluation reports of Mr. Shorba's teaching performance taken during 1971 which show unsatisfactory ratings in 12 out of 16 categories and also show Mr. Shorba's poor attitude toward his teaching duties. There is also evidence that Mr. Shorba was unable to maintain control or gain the respect of his pupils.

We shall also show evidence of a number of occasions when Mr. Shorba resorted to corporal punishment in the classroom without another teacher present. Specifically, the bruising of Jim Davenport on January 15, 1971, the hitting of Jim Davenport on April 29, 1971, letter of April 30, 1971 from Eleanor and Hans

partment informed Shorba's attorney of the charges the Department would rely upon at the hearing.

Notwithstanding the objections of Shorba's counsel, Ching ruled that he would consider evidence relevant to Shorba's competency as a teacher, as well as evidence to the charges relating to corporal punishment of the students.

## OPINION

I. WHETHER RULE 40.2 OF THE RULES AND REGULATIONS OF THE BOARD IS IN DEROGATION OF HRS § 298-16 AND, THUS, NULL AND VOID.

The formulation of policy and control over the public school system rests with the Board of Education. Article IX, section 3, Hawaii Constitution.[7]

The Board of Education, pursuant to HRS § 296-12, is empowered to adopt rules and regulations "not contrary to law, for the government of all teachers, educational officers, other personnel, and pupils, and for carrying out the general scheme of education and for the transaction of its business."[8]

The appellant contends that Rule 40.2, *supra* note 3, of the Board is in derogation of HRS § 298-16, *supra* note 4.

In our opinion, although the phrase "necessary and reasonable punishment" has been construed to include corporal

---

van der Voort concerning pushing of a child reported by their son, and the use of force on Mickey Moldrich and Emil Haury during early April.

We shall also show the overwhelming concern of parents to Mr. Shorba's teaching methods and discipline as evidenced by correspondence collected during 1971.

Mr. Shorba, of course, is aware that he has the right to retain counsel, present evidence and cross-examine witnesses at the above hearing.

[7] Article IX, section 3, Hawaii Constitution, reads:

Section 3. The board of education shall have power, in accordance with law, to formulate policy, and to exercise control over the public school system through its executive officer, the superintendent of education, who shall be appointed by the board and shall serve as secretary to the board.

[8] There is no significant legislative history which explains the scope of the board's rule-making powers.

punishment, *Territory v. Cox*, 24 Haw. 461 (1918), the statute does not expressly provide that teachers are permitted to administer corporal punishment under all circumstances and in any manner.

In our opinion, Rule 40.2, *supra* note 3, is not, on its face, contrary to the provisions of HRS § 298-16 nor violative of the clear mandate of the statute. *Hino v. Kim*, 53 Haw. 492, 497 P.2d 562 (1972). The rule does not prohibit teachers from administering "necessary and reasonable" punishment, but merely limits the conditions under which corporal punishment may be administered.

Where reasonable physical contact (not to punish) is necessary to maintain order in a class or to prevent a student from inflicting possible damage to property or injury to another student, a teacher has the responsibility to take necessary and reasonable action in the exercise of his supervisory duties.

We are of the further opinion that said rule is not unreasonable, *Harris v. Commonwealth of Pennsylvania Secretary of Education*, 372 A.2d 953 (Pa. Comwlth. 1977), nor arbitrary or discriminatory. *Burkitt v. School District No. 1, Multnomah County*, 195 Or. 471, 246 P.2d 566 (1952).

II. WHETHER THE BOARD IN CONDUCTING THE REQUIRED HEARING FOR DISMISSAL OF SHORBA VIOLATED THE PROVISIONS OF HRS § 297-12, *SUPRA* NOTE 2, THUS, REQUIRING OF THE BOARD TO AFFORD SHORBA A NEW HEARING IN ACCORDANCE WITH SAID STATUTE.

The question is whether the Board is required to afford Shorba a new hearing for having added a new charge against Shorba which was not stated in the letter from the superintendent of education and for adducing evidence in support of said new charge at the hearing.

HRS § 91-10(1) of the Hawaii Administrative Procedure Act provides as follows:

§91-10 Rules of evidence; official notice. In contested cases:

(1) Any oral or documentary evidence may be received, but every agency shall as a matter of policy provide for the exclusion of irrelevant, immaterial, or unduly

repetitious evidence and no sanction shall be imposed or rule or order be issued except upon consideration of the whole record or such portions thereof as may be cited by any party and as supported by and in accordance with the reliable, probative, and substantial evidence. The agencies shall give effect to the rules of privilege recognized by law.

The Board is subject to the provisions of Section 91-10(1). HRS § 91-1(1).[9]

Davis, Administrative Law Treatise, section 14.08, states that the phrase "any oral and documentary evidence may be received" is unqualified and not altered by ensuing words "every agency shall as a matter of policy provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence." Hence, only in rare cases have the federal courts held that mere admission of incompetent evidence is reversible error.

In *Whitfield v. Simpson*, 312 F.Supp. 889 (E.D. Ill. 1970), the court said that the accepted doctrine is that strict common law rules of evidence do not apply to an administrative hearing and that the admission of incompetent and irrelevant matter is not reversible error if there is substantial evidence to sustain the decision of the hearing body. *Id.* at 895.

The courts of several states also enunciate the same principle relative to hearsay or other incompetent testimony being admitted. *Kanawha Valley Transportation Co. v. Public Service Commission*, 219 S.E.2d 332 (W.Va. 1975), involving revocation of a certificate of convenience to operate taxicabs; *Edmondson v. Tuscaloosa County*, 265 So.2d 154 (Ala.Civ.App. 1972), involving dismissal of county employee for insubordination; *Russell v. License Appeal Commission of the City of Chicago*, 133 Ill. App.2d 594, 273 N.E.2d 650 (1971), involving revocation of a liquor license; *Maxfield v.*

---

[9] HRS § 91-1(1) reads:

§91-1 Definitions. For the purpose of this chapter:

(1) "Agency" means each state or county board, commission, department, or officer authorized by law to make rules or to adjudicate contested cases, except those in the legislative or judicial branches.

*Tofany*, 310 N.Y.S.2d 783, 34 A.D.2d 869 (1970), involving revocation of driver's license; *Schyman v. Department of Registration and Education*, 9 Ill. App.2d 504, 133 N.E.2d 551 (1956), involving revocation of a physician's license to practice medicine.

The state courts have refused to find prejudicial error when the administrative agency: (1) took into consideration matters not introduced at the hearing and not developed on record, thereby denying the petitioner opportunity to deny or rebut the evidence, *Kanawha Valley Transportation Co. v. Public Service Commission, supra;* (2) admitted evidence of incidences of insubordination other than that with which the employee was charged, *Edmondson v. Tuscaloosa County, supra;* (3) admitted hearsay evidence, *Russell v. License Appeal Commission of the City of Chicago, supra; Maxfield v. Tofany, supra;* (4) admitted records of criminal convictions of persons unrelated to a physician whose license was being revoked, *Schyman v. Department of Registration and Education, supra.*

The rule is that unless the petitioner can show prejudice resulting from the admission of irrelevant or incompetent evidence, the admission of such evidence alone is not grounds for reversal. A quotation from *Schyman v. Department of Registration and Education, supra,* is instructive:

> The admission of irrelevant or incompetent matter before an administrative agency does not constitute reversible error, if there is substantial evidence in the record to sustain the agency's determination. This being the case prejudice cannot be alleged to the admission of improper evidence *unless it be shown that the Board relied on it.* . . . [T]he Board itself in its findings, conclusions and orders took no notice thereof and in no way relied on them or even mentioned them. It found substantial grounds *aliunde* for supporting its order. Assuming, therefore, *arguendo,* that these amendments were improper and irrelevant, the petitioner still cannot predicate error on their admission. *And even less can he claim prejudice when he cannot demonstrate it.* [Italics in text.]

9 Ill. App.2d at 525-526, 133 N.E.2d at 561-562. The court in that case said that to reverse the findings of the agency without a showing of prejudice would amount to requiring the agency to follow formal legal rules of evidence which it was not equipped to do.

In summary, the review of the appellate court, when error is alleged in the admission of evidence, is to determine from the *competent* evidence, whether substantial evidence exists on the record to sustain the agency's decision.

As applied to Shorba, in order to sustain his dismissal, the evidence of violation of the Board's rule on corporal punishment must be deemed substantial evidence to support the dismissal charge of the superintendent of education. We cannot resort to any evidence admitted on the issue of his competency as a teacher unless said evidence is relevant to and probative of the stated charge of the superintendent. Furthermore, it must not appear from the record that the hearing officer *relied* on the evidence of Shorba's alleged incompetency in reaching his decision.

A careful review of the record shows clearly that substantial evidence was adduced of Shorba's violation of the Board's rule on corporal punishment. (1) The record shows that Shorba was informed and/or was made aware of the Departmental Rule 40.2 prior to the incidents in question. (2) On January 15, 1971, Shorba, in an effort to stop Jim Davenport from banging his feet against a bookshelf, forcefully picked Jim up, whereby Jim landed on the ground and bruised his knee. Jim testified that Shorba "threw" him outside, "dragged" him down the hall, and "threw" him into a group of children who were lined up waiting to go to lunch. Mrs. Machado testified that she called Shorba in for a conference:

> . . . I told Mr. Shorba that he should not resort to grabbing, shoving, pushing students around and using physical force on students because this type of handling could be . . . injurious to students. As a result of that conference, we agreed to more positive measures.

Mrs. Machado further testified that "I called his [Shorba's] attention to Jim Davenport's bruise, because a youngster

could be hurt in this way." (3) On April 29, 1971, a second incident occurred involving the same student. Jim testified that while running after another student in the classroom, he was hit on the back of the head by someone's hand and he fell on the ground. Although Jim did not actually see who had hit him, his friends (in the class) told him that Shorba had hit him. Mrs. Machado testified that she became aware of this second incident when she found Jim sitting in the health room on April 29, 1971, complaining of an aching head reportedly caused by Shorba's use of physical force. Shorba testified that he had "tapped the back of Jim's head with the back of his hand . . . on impulse." (4) Mrs. Machado further testified that another fourth grade student, Emil Haury, had been hit on the side of the head and on the back of the head by Shorba about two weeks prior to April 29th or 30th. (5) A third student, Mickey Mouldrich, also a fourth grade student, reported being hit on the head by Shorba with some book reports.

Shorba testified that on April 29, 1971, he had "swat [Jim] with the back of [the] hand" and that since Jim was running, Jim slipped and fell. In regard to the incident involving Emil and Mickey, Shorba testified that he "tapped" both boys on the head with a rolled up folder.

The hearing officer and the Board did not rely on the evidence of Shorba's alleged incompetency as a teacher to sustain the charge on corporal punishment. The record does not show that Shorba was prejudiced by the additional charge and the evidence adduced in support of the charge of alleged incompetency as a teacher.

We, therefore, conclude that the trial court erred in granting Shorba a new hearing.

III. WHETHER SHORBA IS ENTITLED TO REINSTATEMENT WITH FULL BACK PAY TO HIS TENURED POSITION AS A TEACHER.

Shorba, as a last resort, has contended that the delay herein justifies the exercise of the court's "equitable and legal powers" in reinstating Shorba to his tenured position as a teacher with full back pay.

Clearly, HRS § 297-12, *supra* note 2, does not empower the court to grant the relief as contended by Shorba. We are also unaware of any specific law which so empowers the court.

The United States Supreme Court has held that a college professor with tenure, *Slochower v. Board of Education,* 350 U.S. 551 (1956), and public employees dismissed during the terms of their contracts, *Wieman v. Updegraff,* 344 U.S. 183 (1952), have "property" interests in continued employment which are safeguarded by the due process clause of the United States Constitution. *See Board of Regents v. Roth,* 408 U.S. 564 (1972).

In the instant case it is undisputed that Shorba was provided with notice and hearing prior to his dismissal. Further, evidence has not been adduced showing that Shorba was dismissed during the term of his contract. In addition, the record herein fails to elicit any basic equitable or legal ground to grant Shorba the relief as contended. Further, *Slochower, supra, Wieman, supra, Roth, supra,* do not, under the facts herein, provide the relief sought by Shorba.

We, therefore, conclude that Shorba is not entitled to reinstatement to his tenured position as a teacher with full back pay.[10]

Remanded for entry of judgment in accordance with this opinion.

*Randall Y. Iwase,* deputy attorney general, for appellee-appellant, cross-appellee.

*John A. Roney (Stubenberg Shigemura Roney & Gniffke* of counsel) for appellant-appellee, cross-appellant.

---

[10] We do not discuss Shorba's argument that the statute is mandatory, nor do we discuss Shorba's claim that the Department's delay in setting the time for the hearing violated his right to due process, because said questions were not adequately raised on appeal. In any event, we see no merit in them.