NICHIRO GYOGYO KAISHA, LTD., et al., Plaintiffs,

v.

Malcolm BALDRIGE, Secretary, Department of Commerce, et al., Defendants.

Civ. A. No. 84–0452.

United States District Court, District of Columbia.

April 19, 1984.

Stephen B. Johnson, James R. Offutt, Washington, D.C., for plaintiffs.

James C. Kilbourne, Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM

GESELL, District Judge.

Plaintiffs are owners of thirteen Japanese fishing vessels which operate within the United States Fishery Conservation Zone (FCZ) off the coast of Alaska pursuant to permits issued by the United States under the Magnuson Fishery Conservation and Management Act (MFCMA), 16 U.S.C. § 1801 *et seq.* They seek a declaration that they are not required to comply with a request by the National Marine Fisheries Service (NMFS) that plaintiffs turn over for inspection certain logs required to be kept by the MFCMA, and ask for injunctive relief barring the assessment of any civil penalties until their obligations under the

MFCMA are fully determined. The government defends its assessment of civil penalties, contends that the present case is not ripe for adjudication prior to completion of an administrative enforcement proceeding now underway, and argues that in any event plaintiffs are obligated by regulation to produce the logs requested.

After full briefing and oral argument, the Court now has before it plaintiffs' motion for preliminary injunction and defendants' motion to dismiss. For the reasons given below, the Court concludes that plaintiffs' motion must be denied, defendants' motion granted, and the complaint dismissed.

## Background

The Secretary of Commerce has promulgated regulations which impose certain record-keeping requirements on foreign fishing vessels operating in the FCZ, including a requirement that they maintain daily cumulative catch logs on board during the duration of their permit period. See 50 C.F.R. § 611.9(d). The thirteen vessels involved in this action operate under calendar-year permits, and thus are required to keep logs on board which record the catch from the first of the calendar year to date. Late in 1983 the United States Government obtained information which suggested that these vessels might have violated catch restrictions in their 1982 and 1983 permits.[1] As a result, on January 24, 1984, an agent of NMFS sent a letter to plaintiffs directing them to produce the 1982 and 1983 daily cumulative catch logs for those vessels by February 10, 1984. The agent's letter stated that failure to comply with the directive would be considered a violation of 50 C.F.R. § 611.9 and of the vessel fishing permits, and would subject the operators of the vessels to unspecified "appropriate sanctions."[2]

On February 10, 1984, plaintiffs filed the instant declaratory judgment action in lieu of compliance with NMFS's demand. On February 29, 1984, the National Oceanic and Atmospheric Administration (NOAA), of which NMFS is a part, issued Notices of Violation and Assessment (NOVAs) against plaintiffs, assessing fines of $25,000 per vessel for failure to comply with the January 24th directive. At a hearing on plaintiff's motion for a temporary restraining order on March 5, 1984, the government represented to the Court that no additional fines will be assessed against plaintiffs pending resolution of the present dispute; nor will the government act against the vessels or their fishing permits during this period. Plaintiffs' motion was denied in an Order issued March 6th.

## Discussion

Under the constitutional "tolling" doctrine first set forth in Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a party cannot be subject to a penalty for noncompliance prior to being afforded an opportunity to contest legal objections "where the risk of penalties, if he is remitted to defense of enforcement actions, is so coercive as to be a denial of due

1. During November of 1983 representatives of the United States Government boarded eight Japanese fishing vessels, including the NIKKO MARU, a cargo transport vessel to which the vessels involved in this case transferred their catch on a regular basis. Based on documents discovered in those boardings, the United States Government suspects that the vessels involved in this action, which left the FCZ before they could be located and boarded, were involved along with the vessels which were boarded in a scheme to falsify records in order to avoid permit catch restrictions. The thirteen vessels involved in the present case did not return to the FCZ for the December fishing season. When they returned to the FCZ in early 1984 they did not carry on board their transfer logs from prior years, in apparent departure from their earlier practice. These logs are now located in Japan; counsel for plaintiffs has assured the Court that the logs will be preserved pending final resolution of the issues involved herein.

2. Under 16 U.S.C. § 1858(a) fines in the amount of $25,000 per violation are authorized, with each day of noncompliance constituting a separate violation. Revocation or suspension of fishing licenses is also authorized by 16 U.S.C. § 1824(b)(12), and forfeiture of vessels and/or their catch is also possible under certain circumstances.

process." *Floersheim v. Engman*, 494 F.2d 949, 954 (D.C.Cir.1973). "[T]he Constitution is offended when the penalty system' is of such a nature as to create a virtual roadblock to judicial review." *Ford Motor Company v. Coleman*, 402 F.Supp. 475, 484 (D.D.C.1975), *aff'd*, 425 U.S. 927, 96 S.Ct. 1656, 48 L.Ed.2d 170 (1976). Plaintiffs argue that the penalties assessed by the NOVAs are so severe as to violate this constitutional principle. The Court must disagree.

The plaintiffs here have simply been assessed a fine for failure to comply with the dictates of § 611.9.[3] There is nothing unusual in this situation; indeed, it is a garden-variety administrative action. That plaintiffs disagree with the agency's interpretation of § 611.9 does not alter this fact. Plaintiffs are afforded ample opportunity to contest the agency's interpretation of § 611.9 before liability for any fine attaches. Moreover, not simply the question of the proper interpretation of § 611.9 but also the amount of the fine for its violation, if any, is subject to challenge and full administrative and judicial review. *See* 16 U.S.C. § 1855(d); 15 C.F.R. § 904. The fines "assessed" against plaintiffs are in reality only tentative in nature and serve to place an upper limit on their potential liability. Such fines can be and sometimes are reduced at an administrative hearing; they could also be reduced in a subsequent court action.

█ The mere "assessment" of a fine prior to review of plaintiff's challenge to the interpretation of § 611.9 is not sufficient to invoke the *Ex Parte Young* doctrine. Such penalties which accrue during the period in which liability is contested

"are common; ... They are valid, assuming the [company] is accorded adequate opportunity to challenge their assessment at the administrative level before payment must begin." *Duquesne Light Co. v. EPA*, 698 F.2d 456, 469–70 n. 14 (D.C.Cir.1983). In the present case plaintiffs have been accorded such an opportunity, and the dictates of due process have thus been satisfied.[4]

█ The Court also rejects plaintiffs' argument that the proper application of § 611.9 to the facts of this case should be decided on the merits by this Court in the first instance. The present case is an appropriate one for deferral to the primary jurisdiction of the agency. It is well settled that in the absence of a clear jurisdictional defect or evidence of irreparable injury "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Marine Wonderland & Animal Park, Ltd. v. Kreps*, 610 F.2d 947, 949 (D.C.Cir.1979).

The issue of whether or not plaintiffs are required to turn over the logs in dispute is far from clear; under such circumstances the agency "must be accorded first opportunity to interpret the meaning of [the regulation]." *Id.*

A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene. And notions of administrative autonomy require that the agency be given a chance to discover and correct its own errors.

---

3. The Court rejects plaintiffs' argument that the agency's letter directing plaintiffs to produce their logs pursuant to § 611.9(i) is akin to an administrative subpoena. The legal obligation to produce the logs stems not from the letter but from the regulation itself. The letter simply serves to "trigger" the requirements of the regulation.

4. The Court is not presented here with a case where plaintiffs have been assessed massive or cumulating penalties which mount as litigation

of their rights is pursued. The fines assessed in the NOVAs, even if assumed to be the final fines which plaintiffs would face if it was finally determined that § 611.9 has been violated, are not "so heavy as to erect an unfair barrier against the endeavor of an honest litigant to obtain the judgment of the Court," but would simply be "no more than the fair price of the adventure." *Life and Casualty Insurance Co. of Tennessee v. McCray*, 291 U.S. 566, 574–75, 54 S.Ct. 482, 486, 78 L.Ed. 987 (1934).

84

*McKart v. United States*, 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969). Moreover, even if a violation of § 611.9 were found the Court would still benefit from an administrative determination concerning a relatively complex regulation in a somewhat esoteric area of administrative and international law. Finally, fixing the amount of any fines to be imposed for violation of § 611.9, if such a violation is found to have occurred, requires a significant factual inquiry appropriate for resolution by the agency.

The present dispute is not one where the government is threatening plaintiffs with penalties without providing an opportunity to resolve the issues plaintiffs have raised in defense. Indeed, the agency has moved expeditiously to bring the issues presented by plaintiff to a speedy resolution. NOVAs were issued a scant 18 days after plaintiffs failed to comply with the agency's directive, and administrative enforcement proceedings have been promptly initiated. Plaintiffs cannot circumvent this process simply by beating the government to the courthouse door.

The Court thus concludes that plaintiffs are not entitled to the injunctive relief sought preventing assessment of sanctions prior to final resolution of this dispute, and also concludes that the other issues raised herein are more appropriately addressed in the administrative enforcement proceeding now pending. Accordingly, plaintiffs' motion for preliminary injunction is denied, defendants' motion to dismiss is granted and the complaint is dismissed. An appropriate Order is filed herewith.