883 P.2d 629

**Kamuela PRICE and Doctor Nui Price, aka, Maui Loa, and The Church of Hawai'i Nei, Plaintiffs–Appellants,**

v.

**ZONING BOARD OF APPEALS OF the CITY AND COUNTY OF HONOLULU, Department of Land Utilization of the City and County of Honolulu, Defendants–Appellees.**

No. 16231.

Supreme Court of Hawai'i.

Nov. 2, 1994.

fendant-appellee Dept. of Land Utilization of City and County of Honolulu.

Nalani P. Wilson–Ku, Deputy Corp. Counsel, City and County of Honolulu, on the briefs, Honolulu, for defendant-appellee Zoning Bd. of Appeals of City and County of Honolulu.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

LEVINSON, Justice.

The plaintiffs-appellants Kamuela Price and Doctor Nui Price, also known as Maui Loa, (the Prices) appeal from the circuit court's decision and order affirming an adverse decision of the Zoning Board of Appeals of the City and County of Honolulu (ZBA) determining that the Prices had violated the City and County of Honolulu's (the City) Land Use Ordinance (LUO).[1] On appeal, the Prices contend that: (1) the assessment of fines by the director of the City's department of land utilization (DLU) prior to the contested case hearing violates their constitutional right to due process of law; (2) the ZBA exceeded its authority by making a direct finding that a zoning violation had occurred; and (3) the ZBA's "conclusion" that a lunch wagon business was being operated on the Prices' property was clearly erroneous.

We disagree with all three of the Prices' points of error. Accordingly, we affirm the circuit court's decision affirming the decision of the ZBA and remand the matter to the ZBA for a determination of an appropriate fine.

## I. *BACKGROUND*

The Prices own real property located on the Kamehameha Highway in Pūpū-kea, on the island of Oʻahu.[2] The property is located in an area that is designated as "country" for zoning purposes. Under the LUO, commercial eating establishments are prohibited in such areas.

Walter R. Schoettle, on the briefs, Honolulu, for plaintiffs-appellants Kamuela Price and Doctor Nui Price, also known as Maui Loa, and The Church of Hawaiʻi Nei.

Lawrence D. Kumabe and Philmund W.M. Lee, Deputy Corp. Counsel, City and County of Honolulu, on the briefs, Honolulu, for de-

1. The LUO, Ordinance 86–96, has been codified as Honolulu, Haw., Rev. Ordinances ch. 21 (1990).

2. The Church of Hawaiʻi Nei participated in the proceedings below as lessee of the subject prop-

erty and is subsumed within the term "the Prices" for purposes of this opinion.

On February 13, 1990, Danny Brum, a housing and zoning code inspector with the City, observed a lunch wagon in operation on the property. There was a menu with prices posted outside the wagon, and Brum saw people buying food. Brum spoke with Glenn Lane, a part-owner of the lunch wagon, who admitted that food was being sold to the public. On February 21, 1990, Brum issued a notice of violation of section 5.30-4 (Mar. 1994 Rev.) of the LUO. The notice was issued to both the owners of the lunch wagon and the owners of the property.

On March 27, 1990, Brum observed that the lunch wagon was still in operation on the property. As a result, he referred the case to the DLU.

On July 23, 1990, Brum reinspected the property and observed that the violation had been corrected. The lunch wagon was no longer in operation.

On November 6, 1990, Brum returned to the property and discovered that the lunch wagon was again operating. This time it was tended by Eric Papinesche, another part-owner of the business. Brum issued a second notice of violation to the owners of the wagon and the property, and again referred the case to the DLU.

On December 4, 1990, the DLU issued a notice of order that described the violation, ordered correction thereof, and assessed fines for noncompliance pursuant to section 8.60-2 (Jun. 1992 Rev.) of the LUO.[3]

On December 17, 1990, a timely appeal from the DLU's order was taken to the ZBA.[4] While the Prices sought reversal of the order on due process grounds, the DLU contended, and the ZBA agreed, that the issue before the ZBA was whether the director's decision to issue the order had been arbitrary and capricious.

In its August 2, 1991 decision affirming the order, the ZBA entered the following conclusions of law (COLs):[5]

1. Based on the evidence submitted to the ZBA, it is clear that a food service or eating establishment was being operated on the Price property by Lane and Papinesche. They were observed giving food to patrons in exchange for money from the lunch wagon.... They also admitted they were operating the lunch wagon....

2. [The Prices] have appealed the Director's decision. As a result, they have been given the opportunity for an appeal hearing with the ZBA, prior to the Order becoming final. No fines have been collected or paid. No fines can or will be collected until a decision in this appeal is made and the Order is final. All constitutional issues raised by [the Prices] are beyond the scope of this proceeding and can only be decided by the circuit courts upon appeal.

3. [The Prices] have been given an ample *opportunity to examine witnesses*, present evidence and testimony. They have availed themselves of this opportunity at this hearing....

4. Based on the above, the ZBA finds that the Director was not arbitrary and capricious in finding that the LUO had been violated and that Prices had allowed an illegal eating establishment to operate on their property.

---

3. The order assessed fines as follows: (1) a fine of $100.00 to be paid by December 11, 1990, even if the violation was corrected; and (2) a fine of $100.00 per day until corrective action was completed, if corrective action had not been completed by December 11, 1990.

In addition, the order provided in relevant part:

This order shall become final on January 3, 1991. On or before the final date, any person(s) subject to an order may appeal the order. However, an appeal does not suspend any provision of this order, including the imposition of the daily fine. This means that before the order becomes final, you must either correct or appeal the order. The fine must be paid even if you take corrective action.

4. The grounds for the appeal were that "[t]he action of the Director is in violation of the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 5 of the Constitution of the State of Hawai[']i, because it deprives Petitioners of their property without due process of law."

5. On appeal to this court, the Prices challenge only COL No. 1 of the ZBA's decision and order. It is apparent that COL No. 1 commingles findings of fact and conclusions of law.

The ZBA's decision and order (ZBA decision) was mailed on August 5, 1991. The Prices filed a notice of appeal to the circuit court. On May 20, 1992, the circuit court entered a decision and order affirming the ZBA decision and remanding for a determination of an appropriate fine. On June 19, 1992, the Prices filed a timely notice of appeal to this court.

## II. *JURISDICTION*

■ The ZBA claims that the Prices filed an untimely notice of appeal to the circuit court and that, as a result, the circuit court lacked jurisdiction to hear the appeal. We disagree.

Judicial review of contested cases is governed by the Hawai'i Administrative Procedure Act (HAPA), Hawai'i Revised Statutes (HRS) ch. 91 (1985 & Supp.1992). HRS § 91–14 (1985 & Supp.1992) provides in relevant part:

> (b) Except as otherwise provided herein, proceedings for review shall be instituted in the circuit court within thirty days after the preliminary ruling or within thirty days after service of the certified copy of the final decision and order of the agency pursuant to rule of court. . . .

HRS § 91–14(b) (1985). An administrative agency appeal to the circuit court is controlled by Hawai'i Rules of Civil Procedure (HRCP) 72, which provides:

> (b) **Time.** The notice of appeal shall be filed in the circuit court within 30 days after the person desiring to appeal is notified of the rendering or entry of the decision or order, or of the action taken, in the manner provided by statute.

HRCP 72(b) (1991).

In computing the period of time prescribed by HRCP 72, the day of the act after which the designated period of time begins to run is excluded. HRCP 6(a) (1990). The ZBA mailed its final decision and order on August 5, 1991. Under HRCP 5(b) (1990), service by mail is a permissible method of service and is "complete upon mailing." Thus, the statutory thirty day period within which the Prices were required to file a notice of appeal to the circuit court commenced on August 6, 1991, the day after mailing. Pursuant to HRCP 6(e) (1990), the Prices were entitled to add two days to this prescribed period, by virtue of the ZBA's effecting service by mail. Thus, the Prices were accorded thirty-two days, commencing on August 6, 1991, within which to file their notice of appeal. The Prices did so on September 6, 1991, exactly thirty-two days after the statutory period had begun to run. We therefore hold that the Prices' appeal was timely, and the circuit court properly exercised jurisdiction over the matter.

## III. *STANDARDS OF REVIEW*

"In an appeal from a circuit court's review of an administrative decision, the appellate court will utilize identical standards applied by the circuit court." *Mauna Kea Power Co. v. Board of Land and Natural Resources,* 76 Hawai'i 259, 264, 874 P.2d 1084, 1089 (1994). As we have indicated, judicial review of contested cases is governed by HRS § 91–14 (1985 & Supp.1992), which provides in relevant part:

> (g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1) In violation of constitutional or statutory provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the agency; or
>
> .   .   .   .   .
>
> (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record[.]

HRS § 91–14(g) (1985).

■ The courts may freely review an agency's COLs. *Dole Hawai'i Division–Castle & Cooke, Inc. v. Ramil,* 71 Haw. 419, 424, 794 P.2d 1115, 1118 (1990) (citations omitted). Inasmuch as issues of constitutional and statutory interpretation present questions of law, *see State v. Hoey,* 77 Hawai'i 17, 32, 881 P.2d 504, 519 (1994); *Crosby v. State*

*Dep't of Budget & Finance,* 76 Hawai'i 332, 340–41, 876 P.2d 1300, 1308–09 (1994) (citations omitted), the Prices' first two points of error are reviewed *de novo* under the right/wrong standard.

■■■■ An agency's findings of fact (FOFs) are reviewed under the clearly erroneous standard. *Ramil,* 71 Haw. at 424, 794 P.2d at 1118 (citations omitted). Under this standard, a reviewing court will not disturb an FOF unless, after examining the record, it is left with a "definite and firm conviction that a mistake has been committed." *State v. Furutani,* 76 Hawai'i 172, 179, 873 P.2d 51, 58 (1994) (citations omitted). Likewise, a COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case. *AIG Ins. Co. v. Estate of Caraang,* 74 Haw. 620, 629, 851 P.2d 321, 326 (1993); *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 119, 839 P.2d 10, 29, *reconsideration denied,* 74 Haw. 650, 843 P.2d 144 (1992). Because the Prices' third point of error involves just such a COL, *see supra* at 4 n. 5, it is reviewed under the clearly erroneous standard.

## IV. *DISCUSSION*

A. *The DLU's Issuance, Pursuant To The LUO, Of Notices Of Violation And Assessment Of Fines Prior To Administrative And Judicial Review Did Not Deprive The Prices Of Due Process Of Law, Inasmuch As The Prices Were Accorded A Meaningful Opportunity To Be Heard Before Any Obligation To Make Payment Arose.*

### 1. *General principles*

The due process clauses of the fourteenth amendment to the United States Constitution and article I, section 5 of the Hawai'i Constitution guarantee, *inter alia,* that no person shall be deprived of life, liberty, or property without due process of law. In construing the parameters of this fundamental right, we have recognized that

[d]ue process is not a fixed concept requiring a specific procedural course in every situation. *Sandy Beach Defense Fund v.*

*City Council of the City and County of Honolulu,* 70 Haw. 361, 378, 773 P.2d 250, 261 (1989); *cf. Cafeteria & Restaurant Workers Union, Local 473 v. McElroy,* 367 U.S. 886, 895 [81 S.Ct. 1743, 1748–49, 6 L.Ed.2d 1230] ... (1961). Rather, due process is flexible and calls for such procedural protections as the particular situation demands. *Sandy Beach Defense Fund,* 70 Haw. at 378, 773 P.2d at 261; *Morrissey v. Brewer,* 408 U.S. 471, 481 [92 S.Ct. 2593, 2600, 33 L.Ed.2d 484] ... (1972). The basic elements of procedural due process of law require notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Sandy Beach Defense Fund,* 70 Haw. at 378, 773 P.2d at 261; *see also Mathews v. Eldridge,* 424 U.S. 319, 333 [96 S.Ct. 893, 902, 47 L.Ed.2d 18] ... (1976); *North Georgia Finishing, Inc. v. Di–Chem, Inc.,* 419 U.S. 601, 605–06 [95 S.Ct. 719, 721–22, 42 L.Ed.2d 751] ... (1975).

*Evans v. Takao,* 74 Haw. 267, 282, 842 P.2d 255, 262 (1992). *See also Kernan v. Tanaka,* 75 Haw. 1, 22, 856 P.2d 1207, 1218 (1993).

Accordingly, and as a general proposition,

a claim of a due process right to a hearing requires a two step analysis: (1) is the particular interest which the claimant seeks to protect by a hearing "property" within the meaning of the due process clauses of the federal and state constitutions, and (2) if the interest is "property" what specific procedures are required to protect it.

*Kernan,* 75 Haw. at 21, 856 P.2d at 1218 (quoting *Aguiar v. Hawaii Housing Auth.,* 55 Haw. 478, 495, 522 P.2d 1255, 1266 (1974)).

In challenging the City's authority to subject them to the fining mechanism of the LUO, it is obvious that the Prices are seeking to protect their "property." The threshold issue in the present appeal, therefore, concerns the nature of the "specific procedures" that are required to protect their property interest. *See Kernan, supra.* In other words, the question is whether procedural due process has been satisfied by according the Prices adequate notice and an opportunity to be heard at a meaningful time

and in a meaningful manner. *See Evans, supra.*

## 2. *Procedural due process and assessment, as opposed to collection, of fines*

■ As we have noted, the Prices' first claim on appeal is that the assessment of a daily fine of $100.00 per day by the DLU, pursuant to section 8.60-2 of the LUO,[6] constitutes a deprivation of their property without due process of law. Specifically, the Prices contend that their hearing before the ZBA "did not comport with the requirements of due process because it was after the fact"—presumably because the DLU had already *assessed* the fines with which the Prices take issue.

At the purely intuitive level, the Prices' argument is nonsensical. Carried to its logical conclusion, administrative hearings would have to be provided before all notices of any type of monetary fine were issued. For example, the issuance of a parking ticket would be unconstitutional if it were not preceded by a hearing. We are unaware that any jurisdiction has accepted such a view of the dictates of due process.

In any event, section 8.60-2[7] of the LUO expressly accorded the Prices the right to notice of their alleged violations and assessed fines and to an opportunity to be heard at a meaningful time and in a meaningful manner. They were in fact served with notices of the alleged zoning violations. They were apprised of the specific sections of the zoning laws being violated, the nature of the violation, and the dates and times of the alleged violations. When they did not voluntarily correct the violations, they were notified of the fines to which they were subject, depending upon whether and when they took corrective action. Finally, they were advised of the right of appeal to the ZBA before the DLU's order became final.

Pursuant to the procedures set forth above, the Prices appealed to the ZBA. Consequently, they received an administrative hearing before a final order was entered regarding their actual obligation to pay the assessed fine. Having failed to prevail before the ZBA, the Prices appealed to the circuit court. Following the circuit court's adverse ruling, they exercised their right of appeal to this court. Throughout the process, no assessed fine has been collected, and

6. Honolulu, Haw., Rev. Ordinances § 21-8.60-2 (Jun. 1992 Rev.), entitled "Administrative enforcement," provides in relevant part:

In lieu of or in addition to enforcement pursuant to Section 21-8.60-1 [relating to criminal prosecution], if the director [of the DLU] determines that any person is violating any provision of this chapter, any rule adopted thereunder or any permit issued pursuant thereto, the director may have the person served, by mail or delivery, with a notice of violation and order pursuant to this section.
(a) Contents of the Notice of Violation. The notice shall include at least the following information:
(1) Date of the notice;
(2) The name and address of the person noticed;
(3) The section number of the provision or rule, or the number of the permit which has been violated;
(4) The nature of the violation; and
(5) The location and time of the violation.
(b) Contents of Order.
(1) The order may require the person to do any or all of the following:
(A) Cease and desist from the violation;

(B) Correct the violation at the person's own expense before a date specified in the order;
(C) Pay a civil fine not to exceed $1000.00 in the manner, at the place and before the date specified in the order;
(D) Pay a civil fine not to exceed $1000.00 per day for each day in which the violation persists, in the manner and at the time and place specified in the order.
(2) The order shall advise the person that the order shall become final 30 days after the date of its mailing or delivery. The order shall also advise that the director's action may be appealed to the [ZBA].
(c) Effect of Order—Right to Appeal. The provisions of the order issued by the director under this section shall become final 30 days after the date of the mailing or delivery of the order. The person may appeal the order to the [ZBA] as provided in ... the city charter. However, an appeal to the [ZBA] shall not stay any provision of the order.
(d) Judicial Enforcement of Order. The director may institute a civil action in any court of competent jurisdiction for the enforcement of any order issued pursuant to this section....

7. *See supra* note 6.

finality has been held in abeyance as to the Prices' ultimate liability.

> Herein, the procedure ... provide[s] for due process.... A notice [was] served. The effect of the notice [was] somewhat similar to the effect of service of summons in a civil action. The person[s] served [were] given a period of ... days within which to request a hearing before the [administrative agency]. In the interim, the *collection* of the [assessed] fine [did] not take place, and the *collection* [was] deferred until after [finality]. There [was], thus, no deprivation, even temporarily, without a hearing.... There [was] adequate opportunity to be heard.

*Yakima County Clean Air Auth. v. Glascam Builders, Inc.*, 85 Wash.2d 255, 260, 534 P.2d 33, 36 (1975) (emphasis added).

On the record before us, the Prices have simply been assessed a fine for failure to comply with the LUO. As such, we agree with the view of the United States District Court for the District of Columbia:

> There is nothing unusual in this situation; indeed, it is a garden-variety administrative action. That [the] plaintiffs disagree with the agency[ ] ... does not alter this fact. [The] [p]laintiffs are afforded ample opportunity to contest the agency's interpretation of the [ordinance] before liability for any fine attaches. Moreover, not simply the question of the proper interpretation of [the ordinance] but also the amount of the fine for its violation, if any, is subject to challenge and full administrative and judicial review. The fines "assessed" against [the] plaintiffs are in reality only tentative in nature and serve to place an upper limit on their potential liability. Such fines can be and sometimes are reduced at an administrative hearing; they could also be reduced in a subsequent court action.

*Nichiro Gyogyo Kaisha, Ltd. v. Baldrige*, 594 F.Supp. 80, 83 (D.D.C.1984) (statutory citation omitted).

3. *The constitutional "tolling" doctrine*

■ The Prices cite *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), for the proposition that the fact, in itself, that the fine that has been assessed against them "is accruing on a daily basis," pending the process of administrative and appellate review, is sufficient to trigger the constitutional "tolling" doctrine.

> Under the constitutional "tolling" doctrine first set forth in *Ex Parte Young,*. ... a party cannot be subject to a penalty for noncompliance prior to being afforded an opportunity to contest legal objections "where the risk of penalties, if he is remitted to defense of enforcement actions, is so coercive as to be a denial of due process." *Floersheim v. Engman*, 494 F.2d 949, 954 (D.C.Cir.1973). "[T]he Constitution is offended when the penalty system is of such a nature as to create a virtual roadblock to judicial review." *Ford Motor Company v. Coleman*, 402 F.Supp. 475, 484 (D.D.C. 1975), *aff'd*, 425 U.S. 927 [96 S.Ct. 1656, 48 L.Ed.2d 170] ... (1976).

*Nichiro*, 594 F.Supp. at 83. Accordingly, in *Ex parte Young*, the statutory imposition of "enormous fines and possible imprisonment as a result of an unsuccessful effort to test the validity of the laws themselves" was deemed to be unconstitutional on its face. *Ex parte Young*, 209 U.S. at 148, 28 S.Ct. at 449.

*Ex parte Young* is, however, inapposite to the present matter:

> In *Ex parte Young*, the Supreme Court held that the imposition of a penalty was a violation of the due process clause of the fourteenth amendment because of the unique structure of the statute creating the penalty. [The state] had created a ... [c]ommission with power to fix maximum rates.... Stiff penalties, including fines and imprisonment of up to five years, were to be imposed for any violation of the rates as set, but the rates were not independently reviewable. Thus, *the only way ... to seek review of a rate was to incur the penalties.*

*Duquesne Light Co. v. Environmental Protection Agency*, 698 F.2d 456, 469 n. 14 (D.C.Cir.1983) (emphasis added).

Unlike the statutory scheme at issue in *Ex parte Young*, the fines challenged in this appeal are not triggered by the pursuit of the

review process; instead, they are simply penalties for noncompliance.

> The mere "assessment" of a fine prior to review ... is not sufficient to invoke the *Ex Parte Young* doctrine. Such penalties which accrue during the period in which liability is contested "are common; ... They are valid, assuming the [appellant] is accorded adequate opportunity to challenge their assessment at the administrative level before payment must begin." In the present case, [the] plaintiffs have been accorded such an opportunity, and the dictates of due process have thus been satisfied.

*Nichiro*, 594 F.Supp. at 83 (quoting *Duquesne Light Co.*, 698 F.2d at 469–70 n. 14). *See also Thunder Basin Coal Co. v. Reich*, — U.S. —, —, 114 S.Ct. 771, 782, 127 L.Ed.2d 29 (1994) ("Although the [a]ct's civil penalties unquestionably may become onerous if petitioner chooses not to comply, the ... penalty assessments become final and payable only after full review by both the [administrative agency] and the appropriate [appellate court].... Thus, this case does not present the situation confronted in *Ex parte Young* ..., in which the practical effect of coercive penalties for non-compliance was to foreclose all access to the courts.")

#### 4. *Summary*

Because the Prices have been afforded an adequate opportunity to challenge the assessed fine on appeal—at both the administrative and judicial levels—before they incur any obligation to pay it, we hold that the application of the procedural mechanism set forth in section 8.60–2 of the LUO has not violated their right to due process of law.

**B.** *The Zoning Board Did Not Exceed Its Statutory Authority By Finding That There Was A Zoning Violation.*

■ The Prices next contend that the ZBA, in determining that a zoning violation had indeed occurred, engaged in fact-finding that exceeded its authority as an administrative appellate body. According to the Prices, the functions of an administrative appellate body differ sharply from those of a legitimate fact finder. We disagree.

■ Unlike judicial courts of appeals, agency review boards are often authorized to conduct their own evidentiary hearings. Administrative agencies may hear and determine facts, and decide the application of law to the ascertained facts. *See, e.g., Reconstruction Finance Corp. v. Bankers Trust Co.*, 318 U.S. 163, 170, 63 S.Ct. 515, 519, 87 L.Ed. 680 (1943); *Mauna Kea Power Co.*, 76 Hawai'i at 262, 874 P.2d at 1087. The ZBA is the official body empowered to resolve zoning issues in contested case hearings. *See* section 8.60–2(c) of the LUO; Revised Charter of the City and County of Honolulu (RCCCH) § 6–909(a) (1984). As such, it is statutorily required that an administrative agency adopt separate findings of fact and conclusions of law in contested case hearings. HRS § 91–12 (1985). The purpose of the statutory requirement that the agency set forth separate FOFs and COLs is to "assure reasoned decision making by the agency and to enable judicial review of agency decisions." *In re Application of Hawai'i Electric Light Co.*, 60 Haw. 625, 641–42, 594 P.2d 612, 623 (1979) (citations omitted).

The ZBA conducted a fact-finding hearing to determine whether a zoning violation had occurred. It did so in order to review the DLU's decision in accordance with RCCCH § 6–909(a), which provides in relevant part that "[a]n appeal shall be sustained only if the [ZBA] finds that the [DLU's] action was based on an erroneous finding of a material fact, or that the [DLU] had acted in an arbitrary or capricious manner or had manifestly abused discretion." It is self-evident that, in order to conduct a meaningful review of the DLU's action, the ZBA must first examine the facts upon which that action was based.

The ZBA followed all statutory requirements in conducting its contested case hearing and in issuing FOFs and COLs. HRS §§ 91–10(1) and (3) (1985) expressly provide for the receipt of oral and documentary evidence, as well as the cross-examination of witnesses, at such hearings. Thus, the fact that the ZBA heard evidence and considered documents verifying that the Prices were permitting a zoning violation to continue on their property is perfectly consistent with the

dictates of the HAPA. We hold that the ZBA did not exceed its statutory authority in so doing.

### C. The Zoning Board Did Not Err In Its Conclusion That A Zoning Violation Had Occurred.

■ Under the clearly erroneous standard, the ZBA's "conclusion" that a food service or eating establishment was being operated on the Prices' property, thereby violating the LUO, must be upheld if it is supported by "reliable, probative and substantial evidence" on the whole record. *In re Hawai'i Electric Light Co.*, 60 Haw. at 630, 594 P.2d at 617. The record before the ZBA supports its conclusion that a zoning violation, as set forth in the notice of order, in fact occurred on the Prices' property. A permit to serve food on the property was issued to Lane, a co-owner of the lunch wagon. Lane admitted to Brum that he was selling food to the public. Brum and other witnesses observed the lunch wagon operating on the property on numerous occasions.

By contrast, the Prices have failed to establish, through any evidence supporting their claim that no illegal activity occurred on their property, that the ZBA's conclusion is clearly erroneous. Instead, they argue that the conclusion is erroneous because some of the evidence presented at the hearing constituted hearsay or, in the alternative, was irrelevant. Their argument falters on both grounds.

■ First, the ZBA was entitled to consider "[a]ny oral or documentary evidence," so long as it excluded "irrelevant, immaterial, or unduly repetitious evidence" as "a matter of policy." HRS § 91–10(1). Thus, the rules of evidence in administrative hearings, unlike those applicable to judicial proceedings, allow admission of hearsay evidence.[8] *See, e.g., Shorba v. Board of Educ.*, 59 Haw. 388, 397, 583 P.2d 313, 319 (1978) (citing *Russell v. License Appeal Comm'n of the City of Chicago*, 133 Ill.App.2d 594, 273 N.E.2d 650 (1971);

*Maxfield v. Tofany*, 310 N.Y.S.2d 783, 34 A.D.2d 869 (1970)).

■ Second, "[t]he admission of irrelevant or incompetent matter before an administrative agency does not constitute reversible error, if there is substantial evidence in the record to sustain the agency's determination." *Shorba*, 59 Haw. at 397, 583 P.2d at 319 (citation and internal quotation omitted). Unless the Prices can show prejudice resulting from the admission of improper evidence, the admission of such evidence alone is not grounds for reversal. *Id.* at 397–98, 583 P.2d at 319. On the record before the ZBA, there was more than substantial evidence to establish that the Prices permitted the operation of an illegal commercial eating establishment on their property. We therefore hold that the ZBA was not clearly erroneous in concluding that a zoning code violation occurred.

### V. Conclusion

The object of the exercise of appellate jurisdiction is to assure ultimate justice, as far as possible, to the parties concerned. Having so observed, we also note that justice, while blind, is not dumb. We willingly address, and consider seriously, any meritorious procedural or substantive issue. There are, however, occasions when a zoning violation is just a zoning violation.

We hold that the Prices' constitutional and other claims are without merit. Consequently, we affirm the circuit court's May 20, 1992 decision and order and remand this matter to the ZBA for a determination of an appropriate fine.

---

8. The rules of evidence governing administrative hearings are considerably more relaxed than those governing judicial proceedings. This is due in part to the absence of a jury. *See* 4 J. Stein, G. Mitchell & B. Mezines, Administrative Law § 22.01 (1994). Thus, the general rule is that hearsay evidence is admissible in agency proceedings. *Id.* at § 26.01.